**Linda WOLF and Julie Reid, Appellants,**

v.

**SUMMERS–WOOD, L.P. d/b/a Roly Poly Texas, Summers–Wood Management, L.L.C., John W. Summers, and J. Michael Wood, Appellees.**

No. 05–06–00377–CV.

Court of Appeals of Texas, Dallas.

Jan. 31, 2007.

Rehearing Overruled March 5, 2007.

---

2. *See* TEX. PEN.CODE ANN. § 30.05(a), (d) (Vernon Supp.2006).

3. *See* TEX. PEN.CODE ANN. § 12.22 (Vernon 2003).

Deborah S. Coldwell, Ben Mesches, Mary D. Newman, Haynes and Boone, LLP, Dallas, for Appellants.

Gary E. Smith, Graham, Bright & Smith, P.C., Dallas, Nancy M. Hampton, Plano, for Appellees.

Before Justices WHITTINGTON, MOSELEY, and O'NEILL.

## OPINION

Opinion by Justice WHITTINGTON.

In three issues, Linda Wolf and Julie Reid appeal the trial judge's order denying their special appearances. Because the trial court does not have personal jurisdiction over Wolf or Reid, we reverse the trial judge's order and render judgment dismissing appellees' claims against Wolf and Reid individually.

Wolf is the president and Reid is the vice-president of Roly Poly Franchise Systems, L.L.C. (Roly Poly LLC), a franchisor that grants franchise rights to businesses and individuals across the United States. Both Wolf and Reid live in Florida. J. Michael Wood and John W. Summers, both Texas residents, are the original controlling principals of Summers–Wood, L.P. In January 2002, Roly Poly LLC and Summers–Wood entered into a Master Development Agreement that granted Summers–Wood the sub-franchise rights to sell Roly Poly franchises in Texas. Nothing in the record indicates where the contract was negotiated or signed.

In July 2005, appellees filed suit against Wolf, Reid, Roly Poly LLC, and others for breach of contract, fraud, interference with business or contractual relationships, breach of fiduciary duty, violations of the Deceptive Trade Practices Act (DTPA), negligence, negligent misrepresentation, unfair competition, and conversion. In addition to damages, appellees sought a constructive trust, declaratory relief, punitive damages, and attorney's fees. Wolf and Reid each filed a special appearance, a plea in abatement, and subject to those pleadings, an answer. Appellees filed their Second Amended Petition, alleging jurisdiction was proper because "all parties have sufficient minimum contracts with the state of Texas to confer personal jurisdiction upon them." Appellees also alleged Roly Poly LLC is a closely held limited liability company, Wolf and Reid are "using the corporate form of [Roly Poly LLC] to protect them from individual liability for wrongful, fraudulent and tortious acts personally committed by them or at their insistence" and that the "corporate form of [Roly Poly LLC] is a sham being used by [Wolf and Reid] to perpetrate fraud and tortious interference and other tortious acts" on appellees. Wolf and Reid jointly filed a brief and affidavit in support of their special appearances in which they alleged the trial court did not have general or specific jurisdiction. Appellees filed no pleadings or briefs in response to Wolf's and Reid's brief and affidavits; however, during the hearing on the special appearance, Wood testified. The trial judge subsequently denied the special appearances. This interlocutory appeal followed.

## Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). In reviewing a trial judge's ruling on a special appearance, we examine all the evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *Reiff v. Roy,* 115 S.W.3d 700, 705 (Tex.App.-Dallas 2003, pet. denied). However, an exception arises when the plaintiff asserts that personal jurisdiction exists under an alter ego theory. *See BMC Software,* 83 S.W.3d at 798–99. In these circumstances, the Texas Supreme Court has held that jurisdiction based on an alter ego theory cannot be found unless the "party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities [proves] this alle-

gation." *BMC Software*, 83 S.W.3d at 798. The underlying reason for shifting the burden to the claimant is that "Texas law presumes that two separate corporations are indeed distinct entities." *BMC Software*, 83 S.W.3d at 798. Although the supreme court addressed this issue in the context of a corporate alter ego allegation, the holding can be extended logically to the assertion of corporate fiction or sham made in this case. *See Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 250 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (extending *BMC Software* holding to assertion of officer liability because same presumption of legal separateness exists with regard to corporation and its officers).

■ If a trial judge enters an order denying a special appearance but does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software Belgium*, 83 S.W.3d at 795 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987); and *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984)). When, as in this case, the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency on appeal. *BMC Software Belgium*, 83 S.W.3d at 795.

### Jurisdiction

■ A Texas court may exercise personal jurisdiction over a defendant only if the defendant has minimum contacts with the state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See BMC Software Belgium*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). To establish minimum contacts, the defendant must have purposefully availed herself of the privilege of conducting activities inside Texas and enjoyed the benefits and protections of Texas laws. *Reiff*, 115 S.W.3d at 705. The defendant's activities must justify a conclusion the defendant could reasonably anticipate being called into a Texas court. *Reiff*, 115 S.W.3d at 705. The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that does business in Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.041–.045 (Vernon 1997 & Supp.2006). The long-arm statute defines "doing business" as (i) contracting by mail or otherwise with a Texas resident with performance either in whole or in part in Texas; (ii) committing a tort in whole or in part in Texas; (iii) recruiting Texas residents directly or through an intermediary located in Texas, for employment inside or outside Texas; or (iv) performing any other act that may constitute doing business. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042. The broad language of the long-arm statute permits Texas courts to exercise jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795.

■ Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *BMC Software*, 83 S.W.3d at 795–96. General jurisdiction is present when the defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software*, 83 S.W.3d at 796. General jurisdiction requires a showing that the defendant "con-

ducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction." *BMC Software,* 83 S.W.3d at 797 (quoting *CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996) (orig. proceeding)).

In contrast, specific jurisdiction is established if the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *BMC Software,* 83 S.W.3d at 796. The minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790 (Tex.2005).

The "touchstone" of jurisdictional due process analysis is "purposeful availment." *Michiana,* 168 S.W.3d at 784. "[I]t is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana,* 168 S.W.3d at 784 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), emphasis added by *Michiana* court). We consider several factors in determining "purposeful availment." *See Michiana,* 168 S.W.3d at 785; *Lewis v. Indian Springs Land Corp.,* 175 S.W.3d 906, 913–14 (Tex.App.-Dallas 2005, no pet.). First, only the nonresident defendant's contacts with the forum count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of ... the 'unilateral activity of another party or a third person.'" *Michiana,* 168 S.W.3d at 785 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Second, the acts relied upon must be "purposeful" rather than "random, isolated or fortuitous." *Michiana,* 168 S.W.3d at 785 (quot-

ing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Third, the nonresident defendant must seek some benefit, advantage or profit by "availing" herself of the jurisdiction. By invoking the benefit and protections of a forum's laws, a nonresident consents to suit there. *Michiana,* 168 S.W.3d at 785 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); *Lewis,* 175 S.W.3d at 913–15.

In addition to minimum contacts, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795. The following factors are considered in making that determination: (i) the burden on the nonresident defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559; *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex.1991); *Lewis,* 175 S.W.3d at 915.

### General Jurisdiction

In their first issue, Wolf and Reid contend the trial court lacked general jurisdiction because the fiduciary-shield doctrine bars the exercise of general jurisdiction in this case. Wolf and Reid argue that the vast majority of their contacts with Texas were made in their corporate or representative capacity and their individual contacts with Texas were neither continuous nor systematic. After reviewing the record, we agree.

■ The fiduciary shield doctrine protects a nonresident corporate officer or employee from a trial court's exercise of general jurisdiction over the individual when all of the individual's contacts with Texas were made on behalf of the employer. *SITQ E.U., Inc. v. Reata Rests., Inc.,* 111 S.W.3d 638, 650–51 (Tex.App.-Fort Worth 2003, pet. denied) (citing *Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 438 (Tex.1982) ("Absent some allegation of a specific act in Texas, or one with reasonably foreseeable consequences within this state's borders, a nonresident employee of a foreign corporation cannot be sued in Texas simply because his or her employer solicits business here. Constitutional considerations of due process forbid this bootstrapping of minimum contacts.")). *See Clark v. Noyes,* 871 S.W.2d 508, 518 (Tex.App.-Dallas 1994, no writ) ("Generally, jurisdiction over an individual cannot be based upon jurisdiction over a corporation."); *Garner v. Furmanite Austl. Pty., Ltd.,* 966 S.W.2d 798, 803 (Tex. App.-Houston [1st Dist.] 1998, pet. denied) (fiduciary shield doctrine protects employee of company from personal jurisdiction when employee's actions taken on behalf of employer). However, the doctrine will not prevent a court from asserting jurisdiction if it "appears the individuals are using the corporate entity as a sham to perpetrate a fraud, avoid personal liability, avoid the effect of a statute . . . [, or] the corporation is the alter ego of the individual[s]." *J & J Marine, Inc. v. Le,* 982 S.W.2d 918, 927 (Tex.App.-Corpus Christi 1998, no pet.); *see MacMorran v. Wood,* 960 S.W.2d 891, 898 (Tex.App.-El Paso 1997, pet. denied) ("Jurisdiction over an individual cannot be based on jurisdiction over a corporation unless the corporation is the alter ego of the individual."), *overruled on other grounds by Tuscano v. Osterberg,* 82 S.W.3d 457 (Tex.App.-El Paso 2002, no pet.); *Al–Turki v. Taher,* 958 S.W.2d 258, 263 (Tex.App.-Eastland 1997, pet. denied) (same).

In this case, appellees alleged generally that Wolf and Reid used Roly Poly LLC as a sham to perpetrate fraud and other tortious acts. But, appellees did not plead or offer evidence of any facts establishing how Wolf and Reid purportedly used the corporate form of Roly Poly LLC to perpetrate fraud or how the corporate form was a sham or a fiction. *See BMC Software,* 83 S.W.3d at 798 (party seeking to ascribe one corporation's actions to another by disregarding distinct corporate entities must prove allegation to establish personal jurisdiction); *Hoffmann v. Dandurand,* 180 S.W.3d 340, 350 (Tex.App.-Dallas 2005, no pet.) (plaintiff had burden of proving alter ego theory before burden shifted to defendant to negate it; because plaintiff did not meet burden of proving alter ego theory, burden never shifted to defendant to negate it); *Tri–State Bldg. Specialties, Inc.,* 184 S.W.3d at 250 (party seeking to hold officers of corporation individually liable for debts incurred by corporation after corporation's corporate privileges were suspended or revoked bore burden of establishing officer liability). Because appellees did not meet their burden of presenting evidence of a corporate fiction or sham or that Wolf and Reid used the corporate form to perpetrate a fraud, the burden did not shift to Wolf and Reid to produce any evidence in support of their fiduciary shield argument.

■ Nevertheless, each woman filed an affidavit along with her brief in support of the special appearance. Both women testified to facts establishing that their personal contacts with Texas were remote and not continuous or systematic. Wolf, president of Roly Poly LLC, testified that, although she lived in Texas from the age of four until she was ten or eleven years old, she has not lived in or been a resident of

Texas since that time. She currently lives in and is a citizen of Florida. Reid, the vice president of Roly Poly LLC, testified she has never lived or resided in Texas although she traveled to Texas while in college to attend a swimming meet at the University of Texas. She also lives in and is a citizen of Florida. Both women testified to facts establishing that, outside of these personal contacts, their contacts with Texas were made solely on behalf of Roly Poly LLC.[1] Appellees did not file a response to the special appearances although they did present Wood's testimony during the hearing on the special appearance. Wood's testimony, however, did not establish facts or prove that Wolf and Reid used the corporation to perpetrate a fraud or that the corporate form was a fiction or sham. Nor did his testimony refute or contradict Reid's or Wolf's testimony regarding general jurisdiction or that Roly Poly LLC was not operated in a manner indistinguishable from her personal affairs or in a "manner calculated to mislead those dealing with them to their detriment." *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228–29 (Tex.1990) (alter ego relationship may be shown from total dealings of corporation and individuals including evidence of "the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes."); *see also Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986) (court should disregard corporate fiction when facts specifically show it is used as means of perpetrating fraud; where corporation is organized and operated as mere tool or business conduit of another corporation; where corporate fiction is resorted to as means of evading existing legal obligation; where corporate fiction is employed to achieve or perpetrate monopoly; where corporate fiction is used to circumvent a statute; and where corporate fiction is relied upon as protection of crime or to justify wrong.). Be-

---

1. Each woman testified she has not owned, leased, or controlled personal or real property in Texas; maintained an office, mailing address, or telephone number in Texas; committed a tort in whole or in part in Texas; paid, nor is required to pay, taxes to the State of Texas; been a party or testified as a witness in any Texas lawsuit (other than the case at bar); received any compensation as a director, officer, or employee of a business located or incorporated in Texas; held ownership interest in, been employed by, or been an officer or director of a business entity that is owned or operated by any Texas business entity; or been on a board of directors of a business, corporation, or limited liability company formed in Texas or a partner in a Texas partnership. Each woman further testified that, in her individual capacity, she has not solicited business in Texas; advertised or marketed anything to individuals or businesses in Texas; employed any employees or agents in Texas; maintained any investments, brokerage accounts, or bank accounts in Texas; traveled to Texas; engaged in regular correspondence with any person or business in Texas; filed a lawsuit in Texas; conducted any business or entered into a contract or agreement with any Texas business, citizen, or resident or done so in the state of Texas; been a party to any contract that was to be performed in Texas; or received money from business conducted or products sold in Texas. In response to appellees' pleading allegations, Wolf testified she is president and owns fifty percent of Roly Poly LLC; Reid testified she is vice-president and owns fifty percent of Roly Poly LLC. Each testified she has never paid Roly Poly LLC's corporate debts with personal checks; has not commingled her personal property or funds with that of Roly Poly LLC; has never represented she would financially back Roly Poly LLC; and has never diverted Roly Poly LLC's profits to herself for her personal use. Lastly, each woman testified she is not, in her individual capacity, a party to the Master Development Agreement between Roly Poly LLC and Summers–Wood nor is she a party to the contract of sale between Summers and the Blodgetts.

cause appellees failed to meet their burden and Wolf's and Reid's testimony established their individual contacts were made solely as officers of and on behalf Roly Poly LLC, we conclude Wolf and Reid were protected by the fiduciary shield doctrine and that the trial court did not have general jurisdiction over them. We sustain appellants' first issue.

## Specific Jurisdiction

In their second issue, Wolf and Reid contend the trial court lacked specific jurisdiction over each of them. Under this issue, Wolf and Reid claim they are not, individually, parties to the contract and that the evidence is legally and factually insufficient to support the exercise of personal jurisdiction based on appellees' tort claims.

 With respect to appellees' breach of contract claim, we agree with Wolf and Reid. Neither individual was a party to the contract. If a person signs a contract in her corporate capacity, she is not individually a party to the contract. *See Hotel Partners v. Craig*, 993 S.W.2d 116, 121 (Tex.App.-Dallas 1994, pet. denied) ("When an agent arrives in Texas to represent his principal, only the principal is doing business in Texas."); *Mort Keshin & Co., Inc. v. Houston Chronicle Pub. Co.*, 992 S.W.2d 642, 647 (Tex.App.-Houston [14th Dist.] 1999, no pet.) ("When an agent negotiates a contract for its principal in Texas, it is the principal who does business in this state, not the agent."); *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99 (Tex. App.-Houston [14th Dist.] 1995, writ denied) (jurisdiction over individual cannot be based on jurisdiction over corporation with which individual is associated unless corporation is alter ego of individual); *see also Ross F. Meriwether & Assocs., Inc. v. Aulbach*, 686 S.W.2d 730, 732 (Tex.App.-San Antonio 1985, no writ.) (because appellant negotiated contract "only in his corporate capacity as president" of company, appellant acted only in representative capacity, did not act or consummate any transaction in Texas, and did not individually do business in Texas). Thus, the trial court lacked specific jurisdiction over Wolf and Reid with respect to the contract claims alleged by appellees.

Regarding the tort claims alleged by appellees, we note that appellees' pleadings allege tortious acts (specifically, fraud, interference with business or contractual relationships, breach of fiduciary duty, violations of the Deceptive Trade Practices Act (DTPA), negligence, negligent misrepresentation, unfair competition, and conversion) committed by Roly Poly LLC but do not allege specific individual acts by Reid or Wolf. Rather, appellees rely on their conclusory allegations that Wolf and Reid are "using the corporate form ... for wrongful, fraudulent and tortious acts personally committed by them" and that the "corporate form of [Roly Poly LLC] is a sham being used ... to perpetrate fraud and tortious interference and other tortious acts." As previously noted, these pleadings do not provide facts to support these allegations or meet appellees' burden. *See BMC Software*, 83 S.W.3d at 798; *Hoffmann*, 180 S.W.3d at 350–51; *Tri-State Bldg. Specialties, Inc.*, 184 S.W.3d at 250–52.

Furthermore, Wolf and Reid challenged the allegations in their special appearances and provided sworn testimony to refute the allegations. Appellees did not file a response to, contradict, or object to the content of the affidavit testimony. In fact, on appeal, appellees state: "There is no real substantial dispute in the evidence. Appellees concede as true (at least for this appeal) the statements of fact set out in Appellants' Special Appearance proof, their Affidavits." The record shows appellants challenged appellees' assertions that Roly Poly LLC was a corporate sham or

corporate fiction and presented sworn testimony to refute the allegations. Because appellees did not meet their burden to prove that the corporate entity should be disregarded, appellants' only burden was to establish they were not residents of Texas which they did in their affidavit testimony. *See Siskind*, 642 S.W.2d at 437–38. On the record before us, we conclude the trial court lacked specific jurisdiction over Wolf and Reid with respect to the contract claims and tort claims alleged by appellees. We sustain appellants' second issue.

In their final issue, appellants argue the trial judge erred in refusing to file findings of fact and conclusions of law. However, in light of our ruling on appellants' first and second issues, we need not reach this issue. *See* TEX.R.APP. P. 47.1. We overrule appellants' third issue.

We reverse the trial court's order denying Reid's and Wolf's special appearance and render a judgment of dismissal as to Wolf and Reid individually.