**APPA TECHNOLOGY CORPORATION,**
Appellant,

v.

**John Arthur MITCHELL and Greenlee Textron, Inc., Appellees.**

No. 05–06–01326–CV.

Court of Appeals of Texas, Dallas.

May 18, 2007.

Rehearing Overruled July 2, 2007.

Michael A. Miller, Brandie M. Koch, Clark S. Butler, Miller & McCarthy, P.C., Dallas, for Appellant.

Reagan W. Simpson, H. Victor Thomas, King & Spalding, LLP, Houston, John S. Jose, Fort Worth, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and LANG–MIERS.

## OPINION

Opinion by Justice WHITTINGTON.

APPA Technology Corporation, a Taiwanese company that manufactures electronic test and measurement instruments, appeals the trial judge's order denying its special appearance. In a single issue, APPA claims the trial judge erred because Texas courts do not have personal jurisdiction over the foreign company. For the reasons that follow, we agree. Therefore, we vacate the trial court's order and order that John Arthur Mitchell's claims and Greenlee Textron, Inc.'s crossclaims against APPA be dismissed.

## Background

Mitchell, a lineman electrician, used a CM–600 clamp meter alleged to have been designed, manufactured, and sold by Greenlee and/or APPA while checking for voltage on a power line in Dallas. Because the clamp meter read "zero voltage," Mitchell worked on and in close proximity to an electrical transformer. When his chest and torso came into contact with the transformer, Mitchell was electrocuted. Mitchell suffered severe electrical shock and burn injuries, resulting in the amputation of both arms, impaired vision, severe scarring, and the severe limitation of the use of his entire body.

Mitchell sued TXU Electric Delivery Company, Greenlee, and APPA for damages resulting from the injuries he suffered. APPA filed a special appearance. Greenlee, a corporation with its principal place of business in Illinois and authorized to do business in Texas, filed crossclaims against APPA for contribution and/or indemnity. Following a hearing, the trial judge denied APPA's special appearance. This interlocutory appeal ensued.

## Standard of Review

■ Whether a trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002). In reviewing a trial judge's ruling on a special appearance, we examine all the evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *Wolf v. Summers–Wood, L.P.,* 214 S.W.3d 783, 787 (Tex.App.-Dallas 2007, no pet.); *Bergenholtz v. Cannata,* 200 S.W.3d 287, 292 (Tex.App.-Dallas 2006, no pet.). If a trial judge enters an order denying a special appearance but does not issue findings of fact and conclusions of law with the special appearance ruling, all facts neces-

sary to support the judgment and supported by the evidence are implied. *BMC Software,* 83 S.W.3d at 795 (citing *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990); *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987); and *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex. 1984)). When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC Software,* 83 S.W.3d at 795 (citing *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989) and *Zac Smith & Co.,* 734 S.W.2d at 666). In a legal sufficiency challenge, if there is no evidence to support a finding, we set aside that finding. *See Hoffmann v. Dandurand,* 180 S.W.3d 340, 345 (Tex.App.-Dallas 2005, no pet.).

## Personal Jurisdiction

■ A Texas court may exercise personal jurisdiction over a defendant only if the defendant has minimum contacts with the state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See BMC Software,* 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). To have minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities inside Texas and enjoyed the benefits and protections of Texas laws. *Bergenholtz,* 200 S.W.3d at 292. The defendant's activities must justify a conclusion the defendant could reasonably anticipate being called into a Texas court. *Bergenholtz,* 200 S.W.3d at 292.

■ Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984);

*BMC Software,* 83 S.W.3d at 795–96. General jurisdiction is present when the defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software,* 83 S.W.3d at 796. Under general jurisdiction standards, the cause of action need not arise from or relate to the activities conducted within the forum state by the nonresident defendant, but the minimum contacts analysis becomes more demanding; the contacts must be substantial. *See BMC Software,* 83 S.W.3d at 797 (citing *CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996) (general jurisdiction requires showing that defendant conducted substantial activities within forum, more demanding minimum contacts analysis than for specific jurisdiction)).

 In contrast, specific jurisdiction is established if the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *Moki Mac River Expeditions v. Drugg,* No. 04–0432, 2007 WL 623805, at *4 (Tex. Mar.2, 2007); *BMC Software,* 83 S.W.3d at 796. The minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790 (Tex.2005); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). The mere sale of a product to a Texas resident will generally not suffice to confer specific jurisdiction. *Moki Mac,* 2007 WL 623805, at *5. However, a nonresident defendant that "directs marketing efforts to Texas in the hope of soliciting sales is subject to suit here for alleged liability arising from or relating to that business."

*Moki Mac,* 2007 WL 623805, at *4 (citing *Michiana,* 168 S.W.3d at 784–85).

 The "touchstone" of jurisdictional due process analysis is "purposeful availment." *Michiana,* 168 S.W.3d at 784 (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "[I]t is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana,* 168 S.W.3d at 784 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228, emphasis by *Michiana* court); *see Asahi Metal Indus. Co. v.Super. Ct. of Cal.,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (for finding of minimum contacts, substantial connection between defendant and forum state must come by action of defendant purposefully directed toward forum state). We consider three factors in determining purposeful availment. *Moki Mac,* 2007 WL 623805, at *3; *see Michiana,* 168 S.W.3d at 785; *Lewis v. Indian Springs Land Corp.,* 175 S.W.3d 906, 913–15 (Tex.App.-Dallas 2005, no pet.). First, it is only the defendant's contacts with the forum that count, not the unilateral activity of another party or third person. *Moki Mac,* 2007 WL 623805, at *3; *Michiana,* 168 S.W.3d at 785 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Second, the acts relied upon must be purposeful rather than random, isolated, fortuitous, or attenuated. *Moki Mac,* 2007 WL 623805, at *3; *Michiana,* 168 S.W.3d at 785 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Third, a "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Moki Mac,* 2007 WL 623805, at *3. By invoking the benefit and protections of a forum's laws, a nonresi-

dent consents to suit there. *Michiana,* 168 S.W.3d at 785 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); *Lewis,* 175 S.W.3d at 913–15.

■■■■■ In addition to minimum contacts, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795. We consider the following factors in making that determination: (i) the burden on the nonresident defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559; *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex.1991); *Lewis,* 175 S.W.3d at 913–15.

## Discussion

APPA claims the trial judge erred in denying its special appearance because APPA negated all possible grounds for jurisdiction. We agree.

In their pleadings, Mitchell and Greenlee alleged APPA was doing business in Texas "by virtue of its design, manufacture, and sale of electronic test and measurement instruments that are ultimately sold to citizens of Texas." APPA filed a special appearance asserting that both general and specific jurisdiction were lacking in this case. In support of its special appearance, APPA filed the affidavit of its president, Sam Chang. In his affidavit, Chang testified APPA was organized and existing under the laws of Taiwan and that

it operated out of its principal place of business in Taipei, Taiwan. APPA was not incorporated in Texas, is not registered, licensed or otherwise authorized to do business in Texas, and did not have a registered agent in Texas. APPA does not own, rent, or lease property in Texas. APPA does not maintain an office in Texas and has never done so. APPA does not maintain employees, a phone number, a phone directory listing, or a bank account in Texas, and has never done so. No employee, representative, or agent of APPA has traveled to Texas on behalf of APPA in any lawsuit. APPA maintains no assets in Texas.

Chang further testified that to the extent the plaintiff was able to prove APPA did design and/or manufacture the CM–600 series clamp meter at issue in this lawsuit, APPA would not have sold that clamp meter "or other such electronic test and measurement instruments, to any citizen of Texas." Any clamp meters designed and/or manufactured by APPA bearing the Greenlee name were purchased from APPA directly by Greenlee; the APPA products purchased by Greenlee were shipped to Greenlee in Illinois, shipment terms free-on-board, meaning title passed to Greenlee in Taiwan. Chang testified APPA had no specific knowledge that Greenlee was selling products manufactured by APPA to individuals and/or businesses located in Texas. Finally, Chang testified APPA did not participate in or control any decision by Greenlee to ship APPA products to any ultimate destination in Texas.

Greenlee filed a response to APPA's special appearance, asserting that APPA's contacts are sufficient to confer specific jurisdiction.[1] In support of its response,

1. The parties confine their arguments and dis- cussion to whether the Texas courts have spe-

Greenlee attached the affidavits of two Greenlee employees—Thomas Fewell, a senior sourcing buyer, and Richard Duke, a senior electrical engineer. Fewell testified

(i) APPA was routinely made aware that Greenlee had a national distribution network and intended to sell (and did sell) APPA products throughout Canada and the United States;

(ii) during meetings to discuss the anticipated scope of distribution for APPA products, he and others "expressly represented to APPA that Greenlee had a vast distribution network in place and intended to sell the clamp meter and other similar APPA to its various distributors and through retail store customers in all fifty states;"

(iii) when the CM–600 series clamp meter was first released, Greenlee was given the right to distribute it throughout the United States and Greenlee "informed APPA on numerous occasions that the CM–600 series, as well as some of APPA's other electrical voltage and current measurement devices, would be sold by Greenlee to large national retailers including Sears Roebuck, Lowe's Home Improvement Centers and Home Depot;"

(iv) Greenlee and its project managers discussed the methods and efforts that would be utilized by Greenlee in marketing/distributing APPA's products and how to maximize sales of the same throughout the United States;

(v) APPA did not inform Fewell that the company wished to limit Greenlee's distribution network of APPA products nor did APPA inform Fewell that the company did not want Greenlee to advertise,

sell, or otherwise distribute APPA products in Texas; and

(vi) Fewell was aware that APPA manufactures and distributes similar electric voltage and/or current measurement devices to other well-known national distributing chains in the United States and that those chains had local branches and/or distributors in Texas.

Fewell also testified, "Texas, of course, is one of the 'fifty states' in the United States and Greenlee has more than 200 such distributors and retail customers in the State of Texas alone."

Duke testified Greenlee was originally the sole distributor selling the specific design of the CM–600 series clamp meter throughout the United States and that Greenlee sold and distributed APPA manufactured clamp meters, including the CM–600 series, throughout the United States, including sales to Greenlee's distributors in Texas. He further testified

I have been involved in numerous discussions with APPA regarding Greenlee's sale of the CM–600 series clamp meter, as well as some of APPA's other electrical voltage and current reading devices, to large national retailers including Sears Roebuck, Lowe's Home Improvement Centers and Home Depot. I believe APPA was fully aware that its products were being sold/distributed to these large retail customers as evidence by the fact that APPA itself made certain minor product alterations to the CM–600 series clamp meter upon Sears Roebuck's request to accommodate its sales to Sears' customers at its nearly 3900 retail outlets in the United States.

cific jurisdiction over APPA. The record reflects, and the parties do not dispute, that Texas courts do not have general jurisdiction over APPA. *See BMC Software,* 83 S.W.3d at 797–98; *CSR Ltd.,* 925 S.W.2d at 595. Therefore, we confine our discussion to the issue of specific jurisdiction.

Duke testified he was aware that APPA manufactures and distributes similar electric voltage and/or current measurement devices to other well-known national distributing chains in the United States and that those chains had local branches and/or distributors in Texas.

The evidence shows APPA did not conduct activity in or directed at Texas. Although APPA sold Greenlee the CM–600 series clamp meters, title to the clamp meters passed from APPA to Greenlee in Taiwan, and there is no evidence APPA participated in or controlled the decision to ship APPA products to a particular region or state. Greenlee sold the clamp meters throughout the United States. Greenlee argues it made APPA aware of its national distribution network and informed APPA that the clamp meters would be sold to large national retailers; nevertheless, Greenlee's evidence and argument that APPA "must have known" some of the eventual sales of its product would be in Texas does not meet the "purposeful availment" or "substantial connection" standard required to establish specific jurisdiction. *See Asahi*, 480 U.S. at 112, 107 S.Ct. 1026; *Moki Mac*, 2007 WL 623805, at *5; *CMMC v. Salinas*, 929 S.W.2d 435, 438 (Tex.1996). In examining "purposeful availment," we focus on the nonresident defendant's acts, not the unilateral activity of another. *See Michiana*, 168 S.W.3d at 785. In this case, there is no act or action by APPA to establish "availment." There is no evidence in the record that APPA knew the distribution network included Texas or that the retailers were located in Texas. And, although Fewell testified "Texas, of course, is one of the 'fifty states' in the United States and Greenlee has more than 200 such distributors and retail customers in the State of Texas alone," there is no evidence APPA knew Greenlee had distributors and customers in Texas. Greenlee also argues APPA "caused" the clamp meter "to be sold in Texas by entering into a distribution agreement with Greenlee." The evidence in the record, however, does not include a copy of the distribution agreement, any language from the agreement, or what the distribution agreement mandated.

There is evidence APPA knew its products were sold to large retail customers as evidenced by the minor product alterations made to the CM–600 clamp series pursuant to Sears Roebuck's request; nevertheless, there is no evidence APPA actually knew Sears Roebuck stores were located in Texas or that Sears Roebuck would sell the clamp meter in Texas. APPA did not advertise its product in Texas, nor did it provide advice to Texas buyers or have any sales agents in Texas. APPA did not "create, control, or employ" the distribution network that brought the clamp meter to Texas. *See CSR, Ltd.*, 925 S.W.2d at 595–96 (citing *Asahi*, 480 U.S. at 112, 107 S.Ct. 1026). There is no evidence in the record that APPA "took any act purposefully directed toward selling or distributing" CM–600 series clamp meters in Texas. Because a "defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State," we cannot conclude the evidence supports a finding of specific jurisdiction over APPA. *See CSR, Ltd.*, 925 S.W.2d at 595 (citing *Asahi*, 480 U.S. at 112, 107 S.Ct. 1026). We sustain APPA's sole issue.

We vacate the trial court's order denying APPA's special appearance and order that Mitchell's claims and Greenlee's crossclaims against APPA be dismissed.