**WET–A–LINE, L.L.C., Appellant,**

v.

**AMAZON TOURS, INC., Appellee.**

No. 05–07–01561–CV.

Court of Appeals of Texas, Dallas.

June 2, 2010.

Kenneth B. Chaiken, Chaiken & Chaiken, P.C., Dallas, TX, Richard G. Mills, The Law Offices of Rick Mills, Duncanville, TX, for Appellant.

Melissa J. Bellan, Buchanan & Bellan, LLP, G. Kevin Buchanan, Buchanan & Burke, L.L.P., Dallas, TX, for Appellee.

Before Justices BRIDGES, O'NEILL, and FITZGERALD.

## OPINION

Opinion By Justice BRIDGES.

Wet–A–Line, L.L.C. appeals the trial court's denial of its special appearance and, in a single issue, argues the trial court's denial was in error. We reverse the trial court's denial of Wet–A–Line's special appearance and render judgment that Wet–A–Line's special appearance is granted and the action against Wet–A–Line is dismissed.

Amazon Tours, Inc., a Texas corporation, and Wet–A–Line, a Georgia limited liability company, both operate fishing tours in South America. At one time, Trek International Safaris, a Florida corporation, was the exclusive broker and agent for Amazon's tours. James Kern worked as Amazon's manager and had access to Amazon's business accounts, vendor accounts, customer accounts, and a confidential customer list. Kern left Amazon, and Amazon came to believe Kern was using Amazon's confidential information in his business and attempting to sell the information to Amazon's competitors, including Wet–A–Line. Amazon believed Kern, Wet–A–Line, and Trek were spreading false rumors about Amazon in order to damage Amazon's business and redirect Amazon's customers. Amazon also believed Kern brokered an agreement between Trek and Wet–A–Line for the sale of Wet–A–Line's trips.

Amazon filed suit in Texas against Wet–A–Line, Kern, and Trek, alleging Kern violated a covenant not to compete, breached his fiduciary duty, misappropriated trade secrets, and committed theft under the Texas Civil Practice and Remedies Code by providing Wet–A–Line access to Amazon's business accounts and confidential customer information. Amazon subsequently added Richard and Amelia Schair, Wet–A–Line's owners, as defendants. Amazon amended its pleadings and alleged, among other things, Kern and Wet–A–Line tortiously interfered with existing and prospective business relationships, committed defamation and slander, and published and spread false and disparaging information about Amazon.

Amazon alleged jurisdiction was proper in Texas because Wet–A–Line used "booking agents" in Texas to market its fishing trips. Amazon identified Kern, Kent Clifton, and Gene Ditmore as Wet–A–Line's Texas booking agents. Amazon alleged Wet–A–Line advertised its fishing trips and listed links to its website on a website hosted by a Texas resident, sold more than $100,000 in fishing trips to Texas residents, and sent unsolicited emails and newsletters to Texas residents offering special deals to book fishing trips. Amazon alleged Richard Schair, one of Wet–A–Line's owners, traveled to Texas on business and met with Texas residents for the purpose of forming a trade group to promote or facilitate Mexican bass fishing operations. Schair also traveled to Port Aransas, Texas, to "trade trips" with a Texas resident for "business and promotional purposes." According to Amazon, Wet–A–Line entered an agreement with Kern whereby Kern would market Wet–A–Line's fishing trips at trade shows in Texas in competition with Amazon.

Regarding Wet–A–Line's online activities, Amazon alleged Wet–A–Line operated an interactive website that allowed Texas residents to send inquiries, enabled Wet–A–Line to attempt to sell fishing trips based on these inquiries, and featured a "Book Now" option for Texas residents to

purchase fishing trips online. Richard Schair maintained blog entries and promoted Wet–A–Line's products and services on various websites viewable by Texas residents.

Wet–A–Line and Richard Schair and Amelia Schair, as Wet–A–Line's owners, filed special appearances asserting Wet–A–Line and the Schairs did not have sufficient minimum contacts with Texas and had not purposely availed themselves of the privilege of conducting activities in Texas. Therefore, they argued, the exercise of jurisdiction over them would be a violation of their Due Process rights and would offend traditional notions of fair play and substantial justice.

At the hearing on Wet–A–Line's and the Schairs's special appearances, Schair testified by written deposition that Kern represents his own company, Emu Outfitting Company, under which he markets "trips to new destinations." Schair testified Kern was under no obligation to provide Wet–A–Line customers, had no contract with Wet–A–Line, and made the decision whether or not to send Wet–A–Line customers. The record shows Kern first contacted Wet–A–Line about establishing a business relationship. Also in the record is an unsigned document that shows Kern and Wet–A–Line contemplated a business relationship in which Kern would book Wet–A–Line tours for his customers and take "discounts" as commission when the customers paid for the tours. Schair testified Ditmore, another of Wet–A–Line's alleged agents, also received "a discount on trips that [Ditmore was] welcome to resell according to availability."

Kent Clifton testified he owns Westside Adventures, a travel agency for hunting and fishing trips. Clifton received calls from clients wanting trips and, based on the client's interests, directed the clients to different tour operators, including Wet–A–Line. When a client booked a trip, Clifton received the client's deposit and sent it to the tour operator. Eight weeks prior to the trip, the client paid the remainder of the cost, and Clifton took his twenty-percent commission and forwarded the rest to the tour operator. Clifton testified Wet–A–Line and the other tour operators exercised no control over Clifton's business activities. When Clifton received promotional materials for Wet–A–Line tours, he put a sticker over Wet–A–Line's name that contained his own business information. Wet–A–Line delivered all of its services to Clifton's customers out of the country, and never in Texas. Clifton testified approximately twenty-five percent of his business in 2006 came from clients in Texas, but he did not send all of his Texas clients on Wet–A–Line tours. His clientele had never been entirely from Texas. Following the hearing, the trial court granted the Schairs's special appearances but denied Wet–A–Line's special appearance. This appeal followed.

In a single issue, Wet–A–Line argues the trial court erred in denying its special appearance. Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790–91 (Tex.2005); *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002); *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805–06 (Tex.2002); *Hoffmann v. Dandurand,* 180 S.W.3d 340, 345 (Tex. App.-Dallas 2005, no pet.). Because the trial court's exercise of personal jurisdiction over a nonresident defendant is a question of law, an appellate court reviews the trial court's determination of a special appearance de novo. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007); *BMC Software,* 83 S.W.3d at 794.

■ The Texas long-arm statute permits Texas courts to exercise jurisdiction over nonresident defendants that do business in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (Vernon 2008); *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 166 (Tex.2007); *BMC Software*, 83 S.W.3d at 795. The broad language of section 17.042 extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *PHC–Minden*, 235 S.W.3d at 166.

■ The Due Process Clause of the Fourteenth Amendment operates to limit the power of a state to assert personal jurisdiction over a nonresident defendant. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under the Due Process Clause, personal jurisdiction over a nonresident defendant is constitutional when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174; *PHC–Minden*, 235 S.W.3d at 166.

■ To establish minimum contacts, the defendant must have purposefully availed himself of the privilege of conducting activities inside Texas and enjoyed the benefits and protections of Texas laws. *Wolf v. Summers–Wood, L.P.*, 214 S.W.3d 783, 788 (Tex.App.-Dallas 2007, no pet.). The defendant's activities must justify a conclusion the defendant could reasonably anticipate being called into a Texas court. *Id.*

■ Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *Helicopteros*, 466 U.S. at 413–14, 104 S.Ct. 1868. General jurisdiction may exist over a nonresident defendant in a lawsuit where the cause of action does not arise out of or relate to the nonresident defendant's contacts with the forum state. *See Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. 1868; *PHC–Minden*, 235 S.W.3d at 168. General jurisdiction is present when the nonresident defendant's contacts in a forum state are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software*, 83 S.W.3d at 796. A general jurisdiction inquiry is very different from a specific jurisdiction inquiry and involves a "more demanding minimum contacts analysis" than for specific jurisdiction. *PHC–Minden*, 235 S.W.3d at 168; *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996).

■ Usually, the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction. *PHC–Minden*, 235 S.W.3d at 168 (quoting 4 CHARLES ALAN WRIGHT & ARTHUR

R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067.5 (2008)).

As the Texas Supreme Court has noted in *PHC–Minden,* the United States Supreme Court has only upheld a finding of general jurisdiction in one case: *Perkins v. Benguet Consolidated Mining Company,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). *See PHC–Minden,* 235 S.W.3d at 167. In *Perkins,* a company's president, who was also its general manager and principal shareholder, maintained an office in Ohio in which he "did many things on behalf of the company." *Perkins,* 342 U.S. at 447–48, 72 S.Ct. 413; *PHC–Minden,* 235 S.W.3d at 168. He maintained company files in Ohio, carried on correspondence from there, drew and distributed salary checks from his Ohio office, used two Ohio bank accounts for company funds and had an Ohio bank act as transfer agent for the company's stock, held director's meetings in Ohio, supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines there, and dispatched funds from Ohio bank accounts to cover purchases of machinery for such rehabilitation. *Id.* Under these circumstances, the Court held "it would not violate federal due process for Ohio either to take or decline jurisdiction of the corporation in this proceeding." *Id.* at 448, 72 S.Ct. 413.

General jurisdiction has been described as "dispute-blind," an exercise of the court's jurisdiction made without regard to the nature of the claim presented. *PHC–Minden,* 235 S.W.3d at 168. Some commentators suggest using an analytical device whereby the court constructs a hypothetical claim without any forum connection "to insure that any related forum activities of the defendant are not improperly infiltrating the dispute-blind query." *PHC–Minden,* 235 S.W.3d at 168–69 (citing Charles W. "Rocky" Rhodes, *Clarifying General Jurisdiction,* 34 SETON HALL L.REV. 807, 819 (2004)). The example given is whether a corporate defendant's actual activities in California are so pervasive and extensive that it should be amenable to general jurisdiction in California for a hypothetical employment claim filed by a New York citizen employed at corporate headquarters in New York. *See PHC–Minden,* 235 S.W.3d at 169; *Clarifying General Jurisdiction,* 34 SETON HALL L.REV. at 819–20. Such an inquiry properly frames the issue, as general jurisdiction is based solely on the defendant's "continuous and systematic" contacts with the forum. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868; *PHC–Minden,* 235 S.W.3d at 169.

In contrast, specific jurisdiction is established if the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *BMC Software,* 83 S.W.3d at 796. The minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868. Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum. *Id.; Moki Mac,* 221 S.W.3d at 576. For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac,* 221 S.W.3d at 585. The mere sale of a product to a Texas resident will not generally suffice to confer specific jurisdiction upon our courts. *Id.* at 576.

Here, the record shows Amazon largely abandoned its argument that specific jurisdiction is proper over Wet–A–Line and concentrated on establishing that general jurisdiction was proper over Wet–

A–Line. In its brief, Amazon provides no evidence to show Wet–A–Line committed any acts in Texas that would have resulted in an injury to Amazon. In attempting to establish specific jurisdiction, Amazon argues, "There is a substantial connection here; it's all about peacock bass fishing." Our review of the record shows Wet–A–Line's relationship with Kern, Clifton, and Ditmore was one in which Kern, Clifton, and Ditmore were not Wet–A–Line's agents and independently sold their customers fishing trips and received a sales commission from the trip operator. Some of the trips were Wet–A–Line tours. To the extent Kern may have given Wet–A–Line information about Amazon, this did not involve action by Wet–A–Line in Texas. Wet–A–Line's operation of a website and sales to Texas residents and Schair's promotional trips to Texas are not related to the operative facts of Amazon's litigation and do not, therefore, support an exercise of specific jurisdiction over Wet–A–Line. *See Id.* at 585, 576. Further, to the extent Amazon has alleged Wet–A–Line engaged in a conspiracy to defame and interfere with Amazon's business, this does not support the assertion of personal jurisdiction over Wet–A–Line. *Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 773 (Tex.1995) ("we decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely on the effects or consequences of an alleged conspiracy with a resident in the forum state.").

Regarding general jurisdiction, Wet–A–Line sold tours to some of Kern's customers, and Kern received a commission on the sales. However, Kern was not Wet–A–Line's employee, had no contract with Wet–A–Line, and was under no obligation to provide Wet–A–Line with customers. Kern alone made the decision whether or not to send Wet–A–Line customers. Clifton and Ditmore also sold some Wet–A–Line tours to customers and took a commission on the sale, but neither of them were Wet–A–Line employees. Texas law does not presume agency, and the party who alleges it has the burden of proving it. *IRA Res., Inc. v. Griego,* 221 S.W.3d 592, 597 (Tex.2007). Nothing in this record shows that Wet–A–Line had an agency relationship with Kern, Clifton, or Ditmore or was otherwise controlling their actions. *See id.* Further, Wet–A–Line never operated a tour in Texas. Schair traveled to Texas to promote Wet–A–Line but did not maintain an office in Texas, and the trips to Texas were sporadic. Based on this record, we conclude Wet–A–Line's contacts with Texas were not continuous and systematic such that exercise of general jurisdiction over Wet–A–Line would be justified. *See Helicopteros,* 466 U.S. at 416–17, 104 S.Ct. 1868; *PHC–Minden,* 235 S.W.3d at 167–69. Accordingly, the trial court erred as a matter of law in denying Wet–A–Line's special appearance. *See Helicopteros,* 466 U.S. at 416–17, 104 S.Ct. 1868; *PHC–Minden,* 235 S.W.3d at 167–69; *BMC Software,* 83 S.W.3d at 800–01. We sustain Wet–A–Line's single issue.

We reverse the trial court's denial of Wet–A–Line's special appearance and render judgment that Wet–A–Line's special appearance is granted and the action against Wet–A–Line is dismissed.