Steve **BERGENHOLTZ**; Production Software Alliance, Inc.; Zachary Seth, Inc.; and Seth Zachary Company, Appellants

v.

Therese **CANNATA**; Alborg, Veiluva and Cannata, L.L.P.; Cannata & Feldman, L.L.P.; and Geoff Spellberg, Appellees.

No. 05–05–01288–CV.

Court of Appeals of Texas, Dallas.

Aug. 17, 2006.

K. Douglas Perrin, Jerry Mark Perrin, The Perrin Law Firm, P.C., Dallas, for appellants.

Gregory J. Lensing, David R. Woodward, Woodward, Cowles & Thompson, P.C., Matthew Ryan Pickelman, Richard L. Smith, Quilling, Selander, Cummiskey & Lownds, P.C., David Hoffman, Vial, Hamilton, Koch & Knox, L.L.P., Dallas, Theodore J. Riney, Geary Porter & Donovan, P.C., Addison, for Robert Mosconeet A. Sanford.

Before Justices WHITTINGTON, BRIDGES, and LANG–MIERS.

## OPINION

Opinion by Justice WHITTINGTON.

The trial judge granted appellees' special appearance and dismissed appellants' claims against them. In one issue, appellants contend the trial judge erred in ruling appellees are not subject to the trial court's jurisdiction. We affirm the trial court's order.

### BACKGROUND

Therese Cannata, Alborg, Veiluva and Cannata, L.L.P. ("the Alborg firm"), Cannata & Feldman, L.L.P. ("the Cannata firm"), and Geoff Spellberg are California lawyers and law firms who represented some or all of appellants in a California lawsuit in which appellants were sued by Interactive Studio Management, L.L.C. (ISM), a California company. Steve Bergenholtz is a resident of Texas. The other three appellants are Canadian and Texas corporations owned or controlled by Bergenholtz. In their amended petition in this cause, appellants contend appellees committed legal malpractice in the course of representing appellants in the California litigation. Appellants also contend Cannata and the Alborg firm breached fiduciary duties and "acted fraudulently" toward appellants.

Appellees entered a special appearance, arguing the trial court could not exercise personal jurisdiction over them. The trial judge agreed and dismissed the suit against appellees. There is no reporter's record of the hearing on appellees' special appearance, and the trial judge did not enter findings of fact and conclusions of law.

Appellants contend appellees purposefully availed themselves of the jurisdiction of Texas courts when they entered into contracts to represent appellants, billed appellants in Texas, and accepted payment from appellants mailed from Texas. Further, Bergenholtz alleges Spellberg's and Cannata's activities related to a Texas bankruptcy proceeding constitute purposeful availment of the privilege of conducting business in Texas. In his affidavit, Bergenholtz alleged "[i]t was Robert Sanford's [previously a party to this appeal] idea and that of James Quadra of the firm to take the Corporations which are the Plaintiffs in this case and were the Defendants in the ISM case into bankruptcy in Texas." Spellberg, who represented Bergenholtz in the California litigation at approximately the same time period as Sanford, allegedly told Bergenholtz "the Texas bankruptcy would lead to a quicker settlement with ISM for a lesser amount," and "would provide an effective strategic tool for resolving the litigation in California." Spellberg billed Bergenholtz "for advice and services relating to the bankruptcy and for numerous conversations with Texas counsel about the bankruptcy." Bergenholtz further stated Spellberg and Cannata

"sent or included me on correspondence and e-mails to lawyers in Texas dealing with bankruptcy issues, document production and other issues."

Bergenholtz alleged Cannata made representations about her previous clients and connections with Texas, and he hired her based on those representations. She communicated with Bergenholtz by e-mail, letter, and telephone. She "entered an appearance in the Texas bankruptcy case for me ... and was active in the bankruptcy matter." She communicated with Bergenholtz's Texas bankruptcy lawyers as well as with the trustee in bankruptcy. Bergenholtz also alleged Spellberg had contacts with the bankruptcy trustee, Bergenholtz's Texas bankruptcy lawyers, Bergenholtz's Texas accountant, and Bergenholtz's Texas tax lawyer "all relating to the interconnected cases in California and Texas."

Bergenholtz also alleged he signed a fee agreement with Cannata's firm. He paid that firm and Cannata's subsequent firm fees in accordance with the agreement and paid Spellberg a retainer in response to Spellberg's instructions by e-mail. Bergenholtz maintains his actions, including signing the fee agreements, receiving communications and legal advice, and paying the bills for attorneys' fees, were all taken in Texas. Appellants contend these contacts with Texas support the trial court's exercise of jurisdiction over appellees.

Spellberg and Cannata also filed affidavits in connection with their special appearances in the trial court. Spellberg alleged he is a resident of California and is licensed to practice law there. He is not licensed to practice law in Texas, has never been a resident or citizen of Texas, has never appeared in a Texas court pro hac vice, and has never maintained a place of business in Texas. He has never owned or leased any property in Texas;

he has never maintained any bank accounts, addresses, telephone numbers, or employees in Texas. Spellberg took two depositions in Houston over a decade ago in a lawsuit pending in California in which he represented a California party sued by a Texas company for work that took place in California. Spellberg alleges appellants retained him "solely for the purpose of representing and advising them in th[e] California lawsuit" filed by ISM. He alleges he did not represent appellants in the Texas bankruptcy proceedings. He agreed to represent appellants in the California lawsuit after being contacted by Sanford; he did not solicit appellants' business. He rendered all legal services to appellants in California. He did not travel to Texas in the course of representing appellants.

Cannata alleges she is a resident of California and is licensed to practice law there. She was born in Texas and lived there until 1968, when she was fourteen years old. Since then, she has not resided in Texas, has never worked in Texas, and is not licensed to practice law in Texas. She has no bank accounts or property in Texas. The two firms with which she has practiced, and which are also appellees in this action, are California limited liability partnerships "engaged in the practice of law exclusively in the State of California." In 2001 and 2002, a partner in the Alborg firm attended depositions of third-party witnesses in Texas in two actions pending in California not related to the underlying lawsuit; no other travel to Texas by anyone in the firm is alleged or admitted. Cannata represented Bergenholtz in the California lawsuit filed by ISM. She performed all work on the case in California. She did not travel to Texas in connection with her work on the case. During all conversations regarding the case, she was physically located in California, with the

exception of one or two calls when she was in the country of El Salvador in July 2002. All correspondence about the case was sent from or received in California. She denies representing to Bergenholtz that she visited Texas for business matters on a regular basis.

## STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002). In reviewing a trial court's ruling on a special appearance, we examine all the evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *Reiff v. Roy,* 115 S.W.3d 700, 705 (Tex. App.-Dallas 2003, pet. denied). When the trial judge does not file findings of fact or conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software Belgium,* 83 S.W.3d at 795.

## DISCUSSION

A Texas court may exercise personal jurisdiction over a defendant only if the defendant has minimum contacts with the state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See BMC Software Belgium,* 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). To establish minimum contacts, the defendant must have purposefully availed himself of the privilege of conducting activities inside Texas and enjoyed the benefits and protections of Texas laws. *Reiff,* 115 S.W.3d at 705. The defendant's activities must justify a conclusion the defendant could reasonably anticipate being called into a Texas court. *Reiff,* 115 S.W.3d at 705.

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *BMC Software,* 83 S.W.3d at 795–96. General jurisdiction is present when the defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software,* 83 S.W.3d at 796. In contrast, specific jurisdiction is established if the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *BMC Software,* 83 S.W.3d at 796. The minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990); *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790 (Tex.2005).

The "touchstone" of jurisdictional due process analysis is "purposeful availment." *Michiana,* 168 S.W.3d at 784 (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "[I]t is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana,* 168 S.W.3d at 784 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228, emphasis by *Michiana* court). We consider several factors in determining "purposeful availment." *See Michiana,* 168 S.W.3d at 785; *Lewis v. Indian Springs Land Corp.,* 175 S.W.3d 906, 913–15 (Tex.App.-Dallas 2005, no pet.). First, it is only the defendant's contacts with the

forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.'" *Michiana*, 168 S.W.3d at 785 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Second, the acts relied upon must be "purposeful" rather than "random, isolated or fortuitous." *Michiana*, 168 S.W.3d at 785 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Third, a defendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction. By invoking the benefit and protections of a forum's laws, a nonresident consents to suit there. *Michiana*, 168 S.W.3d at 785 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); *Lewis*, 175 S.W.3d at 913–15.

In addition to minimum contacts, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795. The following factors are considered in making that determination: (i) the burden on the nonresident defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559; *Guardian Royal Exch. Assur., Ltd. v. English China Clays*, 815 S.W.2d 223, 231 (Tex.1991); *Lewis*, 175 S.W.3d at 913–15.

Appellants contend specific jurisdiction was established because their claims arise from or are related to appellees' contacts with Texas. Appellants rely on *Cartlidge v. Hernandez*, 9 S.W.3d 341 (Tex.App.-Houston [14th Dist.] 1999, no pet.). In that legal malpractice case, the court of appeals held a Texas court could exercise personal jurisdiction over Cartlidge, an attorney licensed in Nevada. Appellees in that case had retained Cartlidge to represent them in a products liability action in Nevada. *Cartlidge*, 9 S.W.3d at 344. Cartlidge sent to appellees in Texas several agreements regarding the representation, which appellees signed in Texas. *Cartlidge*, 9 S.W.3d at 344. Cartlidge did not perform any of his obligations under the agreements in Texas. *Cartlidge*, 9 S.W.3d at 344. The appellate court concluded Cartlidge had minimum contacts with Texas: "Cartlidge's contacts with Texas consist of the four contracts, two with each client, and his subsequent correspondence with them regarding the progress of their lawsuits." *Cartlidge*, 9 S.W.3d at 348.

Several important factors distinguish *Cartlidge* from this case. First, Cartlidge had "other significant contacts" with Texas:

> Cartlidge represented ninety-three clients, including Hernandez, in a product liability class action against Methodist Hospital, litigated in Harris County. Second, in addition to the appellees, Cartlidge represented several other Texas residents in product liability litigation in Nevada. It is also apparent from the record Cartlidge filed sixty-one bankruptcy claims in Harris County against Vitek, a defendant in the product liability litigation, on behalf of various clients. Finally, Cartlidge testified he periodically sent letters to Hernandez and Kolpek to keep them apprised of the progress of their litigation in Nevada.

*Cartlidge*, 9 S.W.3d at 345 (footnote omitted). Spellberg's and Cannata's contacts

with Texas, unlike Cartlidge's, do not involve representing multiple parties in related Texas lawsuits.[1]

Second, Cartlidge conceded at oral argument he was "doing business" in Texas as defined in the Texas long-arm statute because he contracted with a Texas resident by mail and part of that contract was to be performed in Texas. *Cartlidge*, 9 S.W.3d at 348 n. 7. Thus, the court stated "it is irrelevant to our analysis where the alleged tort of malpractice occurred." *Cartlidge*, 9 S.W.3d at 348. The court concluded Cartlidge had "purposefully availed himself of the privileges and benefits of conducting business in Texas" by contracting with appellees where the execution and partial performance of the contracts was in Texas, accepting the "Texas-based" representation of appellees, representing them in the underlying litigation, and continuing to represent one of the appellees in the class action that was litigated in Texas. *Cartlidge*, 9 S.W.3d at 350. Spellberg and Cannata have not conceded they are doing business in Texas under the long-arm statute.

Third, the *Cartlidge* court relied in part on authority such as *Memorial Hospital System v. Fisher Insurance Agency, Inc.*, 835 S.W.2d 645, 650 (Tex.App.-Houston [14th Dist.] 1992, no writ), in which the court exercised jurisdiction over a defendant "whose sole contact with the forum state was to send fraudulent misrepresentations through a single telephone call." *Cartlidge*, 9 S.W.3d at 347 n. 6 (citing

*Mem'l Hosp. Sys.*, 835 S.W.2d at 648, 651). In a case decided after *Cartlidge*, however, the Texas Supreme Court expressly disapproved of cases such as *Memorial Hospital System* holding specific jurisdiction is necessarily established by allegations or evidence that a nonresident committed a tort in a single telephone call in Texas. *Michiana*, 168 S.W.3d at 791–92 and n. 81; *see also Lewis*, 175 S.W.3d at 914 and n. 7.

Although the *Cartlidge* court stated it needed only to consider the contractual analysis, it also appeared to rely on the tort analysis partially rejected in *Michiana*. The *Cartlidge* court stated, "even a single act can support jurisdiction," 9 S.W.3d at 348 (citing *Memorial Hospital System*), and noted, "[i]f the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum state, he must reasonably anticipate being haled into court there to answer for his actions." *Cartlidge*, 9 S.W.3d at 348. The court also stated, "Cartlidge could foresee that if his performance were deficient it would inflict economic injury on a resident of Texas." *Cartlidge*, 9 S.W.3d at 349. In *Michiana*, the Texas Supreme Court rejected this analysis:

> The court below joined many of its sister courts in stating the following as a rule of jurisdiction: "If a tortfeasor knows that the brunt of the injury will be felt by a particular resident in the forum state, he must reasonably anticipate being haled into court there to answer for his actions." But neither this Court nor

1. While in *Cartlidge*, as well as in this lawsuit, the issue was framed as one of specific, rather than general, jurisdiction, the *Cartlidge* court did consider and cite evidence regarding Cartlidge's contacts with Texas that did not arise out of the claims made in the malpractice suit. Similarly, in *Myers v. Emery*, 697 S.W.2d 26, 32 (Tex.App.-Dallas 1985, no writ), we discussed both specific and general jurisdiction in and noted the lawyer's ownership of mineral interests in Texas, his pleasure and business trips to Texas, his other Texas clients, his law partners' Texas licences, and his calls, mail, and acceptance of payments in the underlying lawsuit from Myers, a Texas resident, were "minimal and fortuitous" and were "not a result of Emery's purposefully conducted activities within the State."

the United States Supreme Court has ever said so.

*Michiana,* 168 S.W.3d at 788–89 (footnote omitted). Thus, we conclude *Cartlidge* is not controlling here.

The *Michiana* court stated, "For half a century, the touchstone of jurisdictional due process has been 'purposeful availment.'" *Michiana,* 168 S.W.3d at 784. The "minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant," not where a defendant "directed a tort." *Michiana,* 168 S.W.3d at 790. Thus, we determine whether Spellberg and Cannata purposefully availed themselves "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana,* 168 S.W.3d at 784 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228).

■■■ We agree with the trial judge that Spellberg did not purposefully avail himself of the privileges and benefits of conducting business in Texas. The record showed Spellberg's representation of appellants was limited to the California lawsuit, was not the result of Spellberg's seeking clients in Texas (Spellberg was contacted by another California lawyer about participating in appellants' defense in California and represented only the two Canadian entities), and did not involve any contacts with Texas other than communications about the California lawsuit and payment of fees. *See Myers,* 697 S.W.2d at 32 (although client's checks for payment to Oklahoma attorney were drawn on Dallas bank, client received mail in Texas from attorney about Oklahoma lawsuit, attorney placed long-distance calls to Texas, and attorney had provided legal services to other Texas clients, these contacts were "minimal and fortuitous" and not result of attorney's "purposefully conducted activities" within Texas); *see also Michiana,*

168 S.W.3d at 788 (although Michiana anticipated profit from sale, financial benefits accruing to defendant from collateral relation will not support jurisdiction if they do not stem from constitutionally cognizable contact with forum state) (citing *World–Wide Volkswagen Corp.,* 444 U.S. at 299, 100 S.Ct. 559). While appellants received Spellberg's legal advice, correspondence, and billings in Texas, it is Spellberg's actions we consider, not appellants' conduct. *See Michiana,* 168 S.W.3d at 785 ("it is only the defendant's contacts with the forum that count"). In their first amended petition, appellants claim Spellberg advised them "wrongfully to withhold documents from production, permitted the filing of privileged documents with the Court, failed to coordinate properly with the bankruptcy lawyers in Texas to assure the objectives of the bankruptcy would be fulfilled, and failed to properly advise his client regarding the defense and settlement of the case." Appellants pleaded these actions constituted negligence and gross negligence proximately causing damage to them. Reviewing the relationship among the defendant, the forum, and the litigation, we conclude appellants' complaint against Spellberg arises out of legal advice given in California regarding his representation of Canadian entities in a California lawsuit. Spellberg did not purposefully avail himself of the benefits of conducting business in Texas and, therefore, could not reasonably anticipate being haled into a Texas court as a result of his actions.

■■■ As to Cannata, appellants rely heavily on her activities related to the Texas bankruptcy proceeding, especially her appearance in the proceeding. The bankruptcy appearance states Cannata "appears for Steve Bergenholtz ... a creditor in the referenced bankruptcy case" and "demands that all notices given in this

chapter 7 case and all papers served or required to be given in this chapter 7 case be given to and served upon the undersigned. . . ." In her contract to represent Bergenholtz in the California proceeding, Cannata undertook "to cooperate with your Texas bankruptcy attorneys, who are attempting to resolve certain disputes with the bankruptcy trustee and assist you in monitoring the pending Chapter 7 bankruptcy cases. . . ."

As required by *Michiana,* we look only at Cannata's actions and not those of appellants or the Texas bankruptcy lawyers. *See Michiana,* 168 S.W.3d at 785. *Michiana* also requires Cannata's actions to be a "purposeful" seeking of some benefit, advantage, or profit by "availing" herself of the Texas jurisdiction. *See Michiana,* 168 S.W.3d at 785. It is not disputed appellants were represented by Texas counsel in the bankruptcy proceedings; in fact, one of the defendants below is one of appellants' bankruptcy lawyers. The bankruptcy was filed in Texas prior to Cannata's representation of any of appellants in the California lawsuit. Cannata neither chose the Texas forum nor participated in the decision to file the bankruptcy in Texas. Cannata argues she was only requesting notices be sent to her as part of her representation of appellants in the California lawsuit. She did not seek permission to practice before the bankruptcy court, and appellants do not point to any other filings she made with the bankruptcy court. Cannata did communicate from California with appellants and Texas residents involved in the bankruptcy proceedings including the bankruptcy trustee. The fact that the bankruptcies were pending in Texas, however, was fortuitous rather than the result of Cannata's "purposeful availment" of the benefit of Texas law; she undertook to represent appellants in California and agreed as part of that represen-

tation to cooperate in bankruptcy proceedings already pending in Texas.

In their first amended petition, appellants claim:

> The Defendant Cannata and the Alborg firm took over representation of these Plaintiffs in the ISM lawsuit from Sanford and Spellberg with a promise to move the litigation forward promptly toward resolution, and with an agreed cap on attorneys' fees to be incurred. Indeed, Cannata, acting at all times as an agent of the Alborg or Cannata firm, represented to Plaintiffs that ISM would eventually have to pay money to the Plaintiffs. Cannata continued with the bankruptcy strategy and even entered an appearance for Bergenholtz in the bankruptcy. Cannata and the firm ran up enormous bills for legal services without providing any equivalent benefit to the Plaintiffs for her representation. She also failed to properly coordinate with bankruptcy lawyers in Texas in the bankruptcy. Cannata's acts and omissions are the acts and omissions of the Alborg firm and Cannata firm, of which she was an agent.

Appellants also pleaded "Cannata and the Alborg firm billed unreasonably and unconscionably for services supposedly rendered by them," constituting a breach of fiduciary duty to appellants. Appellants pleaded Cannata and her firms failed to exercise ordinary care in their representation of appellants, made material misrepresentations regarding the nature and quality of their services to induce appellants to retain and pay them, and were grossly negligent. Again reviewing the relationship among the defendants, the forum, and the litigation, *see Michiana,* 168 S.W.3d at 790, we conclude appellants' claims arise out of Cannata's actions taken in California in the course of representing appellants in a lawsuit pending in California. None of

the misrepresentations or negligence alleged took place in Texas. Cannata was not licensed in Texas; she did not maintain an office in Texas; she did not travel to Texas in the course of the litigation; she did not solicit business in Texas; and she provided advice from her office in California on a lawsuit pending in California, filed by a California plaintiff alleging claims against appellants that arose at least in part from conduct that took place in California. We agree with the trial judge Cannata did not purposefully avail herself of the privilege of conducting business in Texas.

Neither Spellberg's nor Cannata's actions in representing appellants in California gave rise to minimum contacts with Texas. In addition, the exercise of personal jurisdiction over Spellberg and Cannata would not comport with traditional notions of fair play and substantial justice. *See BMC Software*, 83 S.W.3d at 795. Both Spellberg and Cannata offered testimony regarding the burden of defending a lawsuit in Texas. Spellberg is a single parent who practices law exclusively in California. Cannata practices law in California and does not conduct any business of any kind in Texas. While Texas has an interest in protecting its citizens from breach of the attorney/client relationship, California also has an interest in the conduct of the attorneys it licenses in judicial proceedings before courts within its borders. Two of the appellant entities, Zachary Seth, Inc., and Seth Zachary, Inc., are Canadian, not Texas, corporations. There is an identical lawsuit pending in California, filed by appellants immediately after the filing of this lawsuit in Texas. In the contract between Cannata and Bergenholtz, there is an agreement to arbitrate disputes, and the parties agree the decision of the arbitrators will be binding and enforceable pursuant to California law. Appellants' claims arise out of appellees'

actions in California. While other California lawyers and law firms have been dismissed from this appeal after the trial court granted their special appearances, they most likely will have knowledge of facts relevant to the handling of the California lawsuit by appellees. The remaining Texas defendant represented appellants in the Texas bankruptcy proceedings, not the California litigation. Texas's interest in the litigation does not outweigh California's interest.

Appellees have demonstrated they had no systematic and continuous contacts with Texas and did not purposefully direct any act toward Texas. Appellees have carried their burden to negate all bases of personal jurisdiction. We affirm the trial court's order of dismissal.