# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00478-CV

**Eric Red, Appellant**

**v.**

**John Doherty and Doherty & Catlow, A Law Corporation, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-05-001664, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The trial court granted the special appearance of appellees John Doherty and Doherty & Catlow, A Law Corporation, and dismissed appellant Eric Red's claims against them for lack of personal jurisdiction. In one issue, Red contends that the trial court erred in ruling that it did not have personal jurisdiction over appellees. We affirm.

In May 2000 in Los Angeles, California, Red drove his vehicle into a crowded bar, killing two individuals. Family members of those two individuals filed wrongful death claims against Red in California state court, and John Doherty of the California law firm Doherty & Catlow was hired to defend Red against those claims under a $30,000 automobile insurance policy issued by Mercury Insurance Group.

After the wrongful death claims were filed against Red, he briefly moved to Austin, Texas, where he filed for bankruptcy protection. He sought and received a stay of the California

state court wrongful death lawsuit. Red retained Austin attorney Steven Hake to represent him in the bankruptcy. Red sought to discharge all of his debts, including any contingent liability to the wrongful death claimants, but the wrongful death claimants filed an adversary proceeding in the bankruptcy objecting to the discharge of their claims. On the advice of Hake, Red hired another Texas attorney, Stephen Sather, to represent him in the adversary proceeding in the bankruptcy. After a trial, the bankruptcy court determined that the wrongful death claims qualified as exceptions to discharge under 11 U.S.C. § 523(a)(6) because the collision was the result of Red's willful and malicious conduct. The district court affirmed the bankruptcy court's decision on similar grounds, and the Fifth Circuit Court of Appeals affirmed that decision. *See In re Red*, 96 F. App'x. 229, 230 (5th Cir. 2004).

After the Texas bankruptcy court rendered its decision, the California state court in which the wrongful death claims were pending ruled that the Texas court's decision was res judicata as to Red's liability for the wrongful death claims. The court directed a verdict in favor of the claimants on the issue of liability, and the issue of damages was tried to a jury, which returned a verdict awarding slightly over $1,000,000 to the plaintiffs. That judgment was affirmed on appeal. *See Roos v. Red*, 130 Cal. App. 4th 870, 874 (Cal. Ct. App. 2005), *cert. denied*, 546 U.S. 1174 (2006).

In May 2006, Red sued Sather in Texas state court for legal malpractice in connection with the adversary proceeding in the Texas bankruptcy. He later amended his petition to add as defendants John Doherty, the law firm Doherty & Catlow, Mercury Insurance Group, and an employee of Mercury Insurance Group. Against these defendants, Red asserted claims for breach

2

of contract, civil conspiracy, fraud, breach of fiduciary duty and the duty of good faith and fair dealing, negligent misrepresentation, legal malpractice, and DTPA violations.

Appellees John Doherty and Doherty & Catlow filed a special appearance arguing that the Texas court did not have personal jurisdiction over them. After an evidentiary hearing, the trial court granted appellees' special appearance and dismissed Red's claims against them. The court issued findings of fact and conclusions of law. This appeal followed.

The existence of personal jurisdiction is a question of law, but proper exercise of that jurisdiction must sometimes be preceded by the resolution of underlying factual disputes. *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 75 (Tex. App.—Austin 2001, pet. denied). An appellate court determines the appropriateness of the trial court's resolution of those disputes by an ordinary sufficiency of the evidence review based on the entire record. *Id.*

Red contends that several of the trial court's findings of fact are not supported by legally and factually sufficient evidence. A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the finding. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Alenia Spazio, S.P.A. v. Reid*, 130 S.W.3d 201, 209 (Tex. App.—Houston [14th Dist.] 2003, no pet.). We set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

Although Red does not enumerate which of the trial court's findings of fact he challenges on appeal, he alleges in his brief that the trial court had jurisdiction over appellees because Doherty "transacted business within the State of Texas in the course of the Texas bankruptcy proceeding" and "had numerous significant contacts with Texas resident domiciled citizens," and because "all or most of the events that caused the bringing of this suit took place in Texas in the course of those Texas bankruptcy proceedings." Red also alleges that appellees "hired" Sather, directed Sather "in the course of appellees' representation of [Red] in the Texas bankruptcy," and "paid" Sather for his work. We interpret these allegations as challenges to the trial court's findings that: (1) appellees did not perform any act or omission in Texas that relates to Red's allegations; (2) appellees did not agree or consent to act as Red's co-counsel in the Texas bankruptcy case; (3) appellees did not enter into a joint representation agreement with Sather; (4) appellees did not contract with, retain, or recruit Sather to represent Red; (5) Hake recommended to Red that Sather be retained; (6) appellees never solicited or promoted business in Texas; (7) appellees did not perform any act or legal work in Texas on Red's behalf, but performed such work only in California; and (8) appellees' mail and telephone contacts with Sather were minimal and not the result of purposefully conducting activities within the State of Texas.

We conclude that more than a scintilla of evidence exists to support the trial court's findings of fact. At the hearing on appellees' special appearance, the trial court considered, among other things, affidavits from both Red and Doherty, correspondence between Hake and Doherty, correspondence between Doherty and Sather, and live testimony from Hake. The trial court is the sole judge of witness credibility and the weight to be given to testimony. *Navasota Res., Ltd.*

*v. Heep Petroleum, Inc.*, 212 S.W.3d 463, 468 (Tex. App.—Austin 2006, no pet.). We may not disturb a trial court's resolutions of evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *Id.* One of Doherty's affidavits states, in relevant part:

> Neither D & C nor I agreed, consented or were aware that we were designated as co-counsel in the bankruptcy proceeding for Plaintiff. Neither D & C nor I entered into any joint representation agreement with Plaintiff's Texas counsel. Neither D & C nor I contracted with, retained, or recruited Steven R. Hake or Stephen W. Sather (collectively referred to as Plaintiff's "Texas Counsel") to represent Plaintiff in the Texas proceedings.
>
> While D & C represented Plaintiff in California, Plaintiff elected to relocate to Texas. When in Texas, Plaintiff retained Mr. Hake to represent him in the bankruptcy proceeding. Once Mr. Hake determined that a bankruptcy litigator was needed, Mr. Hake recommended that Mr. Sather be retained to represent Plaintiff. . . . At no time did either D & C or I provide any input into the selection of Plaintiff's Texas counsel.
>
> In addition, at no time did either D & C or I make any promises or representations to Plaintiff that we would perform any act in Texas. D & C and I also never solicited or promoted business in Texas. Furthermore, neither D & C nor I performed any act, legal work, or otherwise, in Texas on Plaintiff's behalf. I did not visit Texas or travel to Texas for any activity connected directly or indirectly to Plaintiff's Texas legal proceedings. The only legal work that D & C or I performed on Plaintiff's behalf was in California.

The correspondence between the parties is consistent with Doherty's version of events. Because more than a scintilla of evidence supports the trial court's findings of fact, the evidence is legally sufficient to support those findings.

We also conclude that the evidence is factually sufficient to support the findings of fact. Red contends that the following evidence, which was considered by the trial court in ruling on the special appearance, contradicts the findings of fact: (1) a February 6, 2002 letter from Hake to

5

Doherty in which Hake recommends that Mercury Insurance Group retain Sather to represent Red in the Texas proceedings; (2) a February 13, 2002 letter from Doherty to Sather "as a follow up to our conversations regarding the representation of Eric Red" in which Doherty states that "you [Sather] send your billings to me and I will forward them immediately to Mercury Insurance for payment. Their payment will be sent directly to you."; (3) a May 14, 2002 letter from Doherty to Sather inquiring as to whether Sather could include "any potential claim of Dr. Rubin against Eric [Red], as an item to be protected by the bankruptcy action"; (4) an invoice for Hake's legal services reflecting several conference calls with Doherty; and (5) testimony from Hake to the effect that he advised Doherty to have Mercury Insurance hire Sather and that Red actually hired Sather. However, this evidence is not contrary to the trial court's findings that appellees acted on Red's behalf only in California, did not consent to act as Red's co-counsel in the Texas bankruptcy case, did not hire Sather to represent Red, did not solicit or promote business in Texas, and had contacts with Texas only as necessary to coordinate the defense of Red in the California and Texas proceedings. The trial court's findings of fact are supported by factually sufficient evidence.

We now turn to whether the trial court correctly ruled that it did not have personal jurisdiction over appellees. A plaintiff suing a nonresident defendant bears the initial burden of pleading sufficient allegations to satisfy the Texas long-arm statute, which authorizes a trial court to exercise jurisdiction over a nonresident who "does business" in Texas. *BMC Software*, 83 S.W.3d at 795; *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997). Texas courts may exercise personal jurisdiction over a nonresident if it is authorized by the Texas long-arm statute and

6

comports with constitutional guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990).

Under the federal constitutional test, a state may assert personal jurisdiction over a nonresident defendant if: (1) the defendant has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). When applying the minimum contacts analysis, we focus on appellees' intentional activities and expectations in deciding whether it is proper to call them before a Texas court. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-292 (1980). To establish minimum contacts with Texas, appellees must have purposefully availed themselves of the privilege of conducting activities within the state, thereby receiving the benefit and protection of Texas laws. *See Burger King*, 471 U.S. at 474-75. The activities must be substantial enough to justify a conclusion that appellees reasonably anticipated being called into a Texas court. *Id.* The presence of sufficient minimum contacts may support either general or specific jurisdiction. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex. 1991). Red contends that Texas courts have specific jurisdiction over appellees.

When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *Id.* However, the contact must have resulted from the nonresident defendant's purposeful conduct and not the unilateral activity of the plaintiff or others. *Id.* When specific

7

jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum and the litigation. *Id.*

Red contends that the phone calls and correspondence between appellees and Texas attorneys Hake and Sather were sufficient contacts to authorize personal jurisdiction over appellees. However, long distance telephone calls to the forum state, even coupled with written correspondence and isolated trips to the forum state, are generally not, without more, considered purposeful activities directed toward residents of the forum state. *Lang v. Capital Res. Invs., I & II, LLC*, 102 S.W.3d 861, 867 (Tex. App.—Dallas 2003, no pet.); *Eakin v. Acosta*, 21 S.W.3d 405, 409 (Tex. App.—San Antonio 2002, no pet.), *disapproved of on other grounds by BMC Software*, 83 S.W.3d at 194 n.1.

The facts of this case are similar to *Bergenholtz v. Cannata*, 200 S.W.3d 287 (Tex. App.—Dallas 2006, no pet.). In that case, Bergenholtz, a Texas resident, was represented by Texas attorneys in a Texas bankruptcy proceeding and California attorneys in a lawsuit in California. *Id.* at 290. Bergenholtz sued his California attorneys in Texas state court for legal malpractice in connection with the California lawsuit. *Id.* The trial court granted the California attorneys' special appearance. *Id.* On appeal, Bergenholtz argued that the California attorneys purposefully availed themselves of the jurisdiction of Texas courts when they entered into contracts to represent Bergenholtz, billed Bergenholtz in Texas, and accepted payment from Bergenholtz mailed from Texas. The court held that Texas courts lacked personal jurisdiction over the California attorneys because the California attorneys' representation of Bergenholtz was limited to the California lawsuit, was not the result of seeking clients in Texas, and did not involve any contacts with Texas other than

8

communication with the bankruptcy attorneys about the California lawsuit. Although one California

attorney made an appearance in the Texas bankruptcy proceeding, the court stated:

> The fact that the bankruptcies were pending in Texas, however, was fortuitous rather than the result of [the California attorney's] "purposeful availment" of the benefit of Texas law; [the California attorney] undertook to represent appellants in California and agreed as part of that representation to cooperate in bankruptcy proceedings already pending in Texas.

*Id.* at 296.

The contacts alleged in this case are even more attenuated than the ones found to be

insufficient to authorize personal jurisdiction over the nonresident defendants in *Bergenholtz*.

Appellees were hired to represent Red before he moved to Texas. They did not contact Red in Texas

to represent him in the California litigation or have contacts with the Texas attorneys hired by Red

except as necessary to coordinate the defense of Red in the California litigation. It is undisputed that

Doherty never traveled to Texas to perform legal work. Although Hake advised Doherty that

Mercury Insurance should hire Sather to represent Red, there is no evidence that Doherty hired

Sather or exercised control over Sather's handling of the litigation in Texas. Appellees' contacts

with the Texas attorneys were limited to long distance telephone calls and correspondence

coordinating Red's defense in the California and Texas state court proceedings.

Red contends that this Court's opinion in *Rowland & Rowland, P.C. v. Texas*

*Employers Indemnity Co.* supports the exercise of personal jurisdiction. *See* 973 S.W.2d 432

(Tex. App.—Austin 1998, no pet.). In that case, a Tennessee law firm wrote a letter to a Texas

company representing that the firm would protect the company's interest in a pending Tennessee

9

wrongful death case. *Id.* at 434. Relying on that letter, the Texas company did not intervene in the Tennessee litigation. *Id.* At the conclusion of the litigation, the Tennessee firm distributed the entire recovery to the wrongful death claimants to the exclusion of the Texas company, which then sued the Tennessee firm in Texas for breach of contract, conversion, fraud, and negligent misrepresentation. *Id.* This Court determined that the Texas court had specific jurisdiction over the Tennessee firm based on two purposeful contacts with Texas: (1) the letter to the Texas company confirming that the firm would represent it in the litigation, and (2) the Tennessee firm's unilateral decision to distribute the entire recovery to the wrongful death claimants and their lawyers, all of whom were Texas residents. *Id.* at 435-36.

The facts of this case are different from the facts presented in *Rowland*. As discussed above, appellees did not contact Red in Texas to represent him in the California litigation or have contacts with the Texas attorneys hired by Red except as necessary to coordinate the defense of Red in the California litigation. Red contends that the February 13, 2002 letter from Doherty to Sather in which Dorerty states "you [Sather] send your billings to me and I will forward them immediately to Mercury Insurance for payment. Their payment will be sent directly to you" is comparable to the letter sent from the Tennessee law firm to the Texas company in *Rowland*. We disagree. Although the correspondence was initiated by Doherty, it states "[t]his is a follow-up on our conversations regarding the representation of Eric Red." We are of the view that appellees did not purposefully avail themselves of the privileges and benefits of conducting business in Texas by sending this one

10

letter coordinating the payment between Mercury Insurance Group and Sather. The trial court correctly dismissed Red's claims against appellees for lack of personal jurisdiction.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: July 20, 2007