TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00507-CV






Matthew A. Wilson, Appellant


v.


Brian Baker and Stephen R. Walker, Appellees






FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY, NO. 12932-C 

HONORABLE LINDA RODRIGUEZ, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Matthew Wilson appeals the trial court's denial of his special appearance in the suit
brought against him by Brian Baker and Stephen R. Walker. Appellees, both Texas attorneys, allege
that Wilson, an Oregon attorney, promised and failed to pay them fully for legal services rendered
in Texas to Wilson's friends. Wilson filed a special appearance contending that he lacked sufficient
contacts with Texas to justify its court's exercise of jurisdiction over him. We will affirm the trial
court's denial of Wilson's special appearance.


BACKGROUND


 The following summary of events underlying this appeal is drawn from pleadings and
exhibits on file at the time of the special appearance hearing. (1) It is not intended to be binding
regarding the resolution of any issue in future litigation.

 Appellees allege that Wilson contacted them to represent Kevin and Valerie Elliott,
who Wilson said he considers like family. The Elliotts, former Texas residents living in Arizona,
were charged with a crime in Travis County, Texas. Appellees each agreed to represent one of the
Elliotts for a total payment of $20,000. Although there is no formal, signed document in the record
entitled "Contract" in which Wilson expressly states that he is obligated to pay the full $20,000, he
paid appellees approximately $11,000 and appellees submitted to the trial court printouts of emails
in which Wilson repeatedly thanks appellees for their work and expresses his intention to pay more. 
In his responses to interrogatories, Wilson repeatedly "denies ever agreeing or contracting to be
responsible primarily, or secondarily, for the obligation of paying of the Elliotts' fees."

 Appellees sued when the payments stopped, alleging that they have provided legal
services to the Elliotts in exchange for and reliance on Wilson's promise to pay $20,000 for those
services. They allege theories of breach of contract, promissory estoppel, and quantum meruit.

 Wilson filed a special appearance, contending that he is not subject to either general
or specific jurisdiction in Texas courts. He does not reside in Texas, denied entering into a contract
with appellees, and alleged that he has no purposeful business contacts with Texas. He filed an
affidavit denying that he ever agreed to be responsible for the Elliotts' fees, although he did pay
some of them. He contended that he lacks sufficient minimum contacts with Texas and that a Texas
court would offend traditional notions of fair play and substantial justice by exercising jurisdiction
over him. He also contended that defending the suit in Texas would be inconvenient and costly.

 Appellees replied that Wilson initiated contact with them in Texas and that his contact
and payment of them induced them to perform work in Texas that benefitted Wilson. Their lawsuit
arose directly from those contacts and provided a basis for a Texas court to exercise jurisdiction. 
They submitted their own affidavits as well as printouts from email correspondence with Wilson to
support their allegations.

 Wilson supplemented his special appearance with his affidavit and deposition
testimony that he urged showed a lack of jurisdiction. He details in his affidavit his lack of contacts
with Texas in this case, such as the fact that he signed no contract agreeing to pay appellees, has not
met either attorney about the Elliotts' case, and has never met Baker in person. (He had met Walker
in conjunction with an unrelated case.) He also relies on the professional services agreement
between Baker and Kevin Elliott that is signed only by Elliott.

 The trial court held a hearing on the special appearance at which it admitted exhibits
and heard argument. It then denied the special appearance without stating a basis for its ruling.


STANDARD OF REVIEW


 The Texas Supreme Court recited the analytical framework for jurisdiction over
non-resident defendants under the Texas long-arm statute and the constitution in Retamco Operating,
Inc. v. Republic Drilling Co., 278 S.W.3d 333, 337 (Tex. 2009). Personal jurisdiction is a question
of law that we review de novo. Id. When, as here, the trial court does not make findings of fact and
conclusions of law in support of its ruling, "all facts necessary to support the judgment and supported
by the evidence are implied." BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex.
2002). The jurisdictional inquiry must be distinct from the underlying merits; a court that equates
the substantive merits with personal jurisdiction violates the fairness considerations that form the
basis of due-process mandates. Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.,
260 S.W.3d 67, 81 (Tex. App.--Houston [1st Dist.] 2008, no pet.).

 "Texas courts may assert in personam jurisdiction over a nonresident if (1) the Texas
long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is
consistent with federal and state constitutional due-process guarantees." Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007). Under the Texas long-arm statute, the
plaintiff has the initial burden to plead sufficient allegations to confer jurisdiction. American Type
Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex. 2002). The defendant seeking to
avoid being sued in Texas then has the burden to negate all potential bases for jurisdiction pled by
the plaintiff. Id.

 The Texas long-arm statute "allows the statute to reach as far as the federal
constitutional requirements of due process will allow." Moki Mac, 221 S.W.3d at 575; accord
Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 788 (Tex. 2005). Under
constitutional due-process analysis, the exercise of personal jurisdiction is proper when (1) the
nonresident defendant has established minimum contacts with the forum state, and (2) the assertion
of jurisdiction complies with "traditional notions of fair play and substantial justice." Moki Mac,
221 S.W.3d at 575 (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Once
a court determines that a nonresident defendant has purposefully established minimum contacts, only
in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. 
Petrie v. Widby, 194 S.W.3d 168, 175 (Tex. App.--Dallas 2006, no pet.) (citing Guardian Royal
Exch. Assurance, Ltd., 815 S.W.2d 223, 231 (Tex. 1991). In a special appearance, a defendant bears
the burden of presenting "a compelling case that the presence of some consideration would render
jurisdiction unreasonable." Guardian, 815 S.W.2d at 231 (quoting Burger King Corp. v. Rudzewicz,
471 U.S. 462, 477 (1985)).

 A defendant establishes minimum contacts with a state when it "purposefully avails
itself of the privilege of conducting activities within the forum state, thus invoking the benefits and
protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing International Shoe
Co., 326 U.S. at 319). "The defendant's activities, whether they consist of direct acts within Texas
or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate
being called into a Texas court." American Type, 83 S.W.3d at 806 (citing World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 297 (1980)). A nonresident's contacts can give rise to either
specific or general jurisdiction. American Type, 83 S.W.3d at 806. General jurisdiction arises when
the defendant's contacts with the forum are continuous and systematic. Id. at 807. Specific
jurisdiction arises when (1) the defendant purposefully avails itself of the privilege of conducting
activities within the forum State, thus invoking the benefits and protections of its laws, and (2) the
cause of action arises from or is related to those contacts or activities. Burger King, 471 U.S. at 472;
National Indus. Sand Ass'n v. Gibson, 897 S.W.2d 769, 774 (Tex. 1995). In a specific jurisdiction
analysis, we focus on the relationship among the defendant, the forum, and the litigation. Moki Mac,
221 S.W.3d at 575-76 (citing Guardian, 815 S.W.2d at 228).

 We consider three factors in determining whether a defendant purposefully availed
itself of the privilege of conducting activities in Texas:


 First, only the defendant's contacts with the forum are relevant, not the unilateral
activity of another party or a third person. Second, the contacts relied upon must be
purposeful rather than random, fortuitous, or attenuated. Thus, sellers who reach out
beyond one state and create continuing relationships and obligations with citizens of
another state are subject to the jurisdiction of the latter in suits based on their
activities. Finally, the defendant must seek some benefit, advantage or profit by
availing itself of the jurisdiction.



Id. at 575 (internal citations and quotations omitted). Additionally, the minimum-contacts analysis
is focused on the quality and nature of the defendant's contacts, rather than their number. American
Type, 83 S.W.3d at 806.

 When considering whether the forum's exercise of jurisdiction is consistent with
traditional notions of fair play and substantial justice, courts must determine whether the relationship
between the defendant and the forum is such that requiring the defendant to defend a suit is
reasonable. World-Wide Volkswagen, 444 U.S. at 292. The burden on the defendant to defend the
suit in a foreign (to him) forum must be considered in light of the forum's interest in adjudicating
the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate
judicial system's interest in obtaining the most efficient resolution. Id.


ANALYSIS


 Wilson asserts by his sole issue on appeal that Texas courts have no personal
jurisdiction over him. He contends that his contacts with Texas are too sparse to support general
jurisdiction and do not satisfy the purposeful availment prong of the due process analysis. He argues
that he has consistently tried to avoid contact with Texas concerning the underlying case by referring
the case to appellees, not signing any formal agreement to pay, and contacting appellees only by
phone, email, mail, and fax. In his affidavit, he cites the statute of frauds defense he contends
invalidates any unwritten agreement to be responsible for the debt of another as evidence that no one
contemplated that he would be responsible for the Elliotts' debt. He also relies on a case holding
that a California attorney who represented some Texas residents in a California bankruptcy case
did not subject herself to Texas jurisdiction by requesting that a Texas bankruptcy trustee send
her notices pertaining to a related Texas bankruptcy, advising the Texas clients concerning the
Texas bankruptcy, or signing a fee agreement and accepting their payments. Bergenholtz v. Cannata,
200 S.W.3d 287, 295-97 (Tex. App.--Dallas 2006, no pet.). The attorney in that case had no other
significant current contacts with Texas, however, and the Texas bankruptcy predated her
involvement with the clients. Id. at 296. She did her work almost exclusively in California. Id. at
291. The court of appeals concluded that the attorney's contact with Texas was merely fortuitous
and a byproduct of her representation of her clients in the California bankruptcy. Id. at 296.

 Wilson's actions in this case differ crucially from those described in Bergenholtz. 
Although he did not choose for the Elliotts to be prosecuted in Texas, he sought counsel for them
in Texas. Based on the allegations and documents on file in the appellate record, Wilson did not
simply refer their case to appellees or find counsel and step away. Instead, he allegedly stated over
the telephone on October 3, 2008 that he would pay appellees $20,000 to represent the Elliotts, who
were like family to him. (2) In an email dated October 3, 2008, he stated to appellee Baker "[o]nce we
have some more information, I would like to set up a call with you and the Elliott's (sic) and their
AZ attorney to develop a game plan." Appellees allege that they agreed to represent the Elliotts
because of Wilson's assertions. They allege--and supplied correspondence allegedly from Wilson
supporting the allegation--that Wilson paid some of the $20,000 and asserted that more would be
forthcoming. A letter dated October 22, 2008 states that the first installment payment of fees for the
Elliott matter was enclosed, and asserts that Wilson would send additional sums "shortly." A
December 3 email states that Wilson "will be sending another check . . . for the Elliott legal fees." 
In a December 22 email, Wilson states that he would send a check for $5,000 the next day and a
check for $10,000 in January 2009. A February 2009 email states that Wilson had hit an unexpected
cash crunch, but was "working on a solution" and was "committed to getting [appellees] paid." In
a June 19, 2009 email, Wilson asked Baker to confirm that he had received $11,000 of the $20,000
fee. In a July 30, 2009 email, Wilson stated that he would be sending a $1,000 payment on Monday. 
In an August 12, 2009 email Wilson asserted that he would soon pay approximately $4,000 "towards
Mr. Elliott's fees." In an August 26, 2009 email, Wilson asserts that he would like to end his
involvement--particularly if appellees would "release him" for immediate payment of $5,000. 
Otherwise, he would only pay $1,000 per month "until the full $20K is paid." Appellees stated in
their affidavit that they "fully performed all obligations under their agreement and represented the
Elliotts to the conclusion of their cases in January 2010."

 These actions combine to demonstrate that Texas has jurisdiction over Wilson for the
causes of action alleged here. Unlike the defendant in Michiana, who defeated the exercise of
jurisdiction in large part by showing that its contact with a Texas resident was initiated by the Texas
resident, see 168 S.W.3d at 784-85, evidence shows that Wilson purposefully initiated contact with
Texas residents intending that they would perform work in Texas. Evidence in the record on appeal
shows that his contact with the Texas lawyers continued during their representation of the Elliotts.
Using the language of Michiana, we conclude that Wilson "reach[ed] out beyond one state and
create[d] continuing relationships and obligations with citizens of another state" and, therefore, is
"subject to the jurisdiction of the latter in suits based on [his] activities." See id. (citing Burger King,
471 U.S. at 473). Finally, although there is no evidence that Wilson visited Texas regarding the
Elliotts' case or that Wilson profited from their representation, evidence shows that he sought the
benefit of helping to protect his friends--who, according to Baker, Wilson said were "like family"
to him--by paying for licensed attorneys to represent them. While a party can structure transactions
to avoid a particular forum, see id., Wilson allegedly called Texans in Texas, induced them to
represent his friends in Texas courts by promising to pay them, and sent money to Texas addresses. 
Other than not availing himself of a visit to Texas concerning the Elliotts' case, Wilson did nothing
to avoid Texas jurisdiction. He purposefully availed himself of the privilege of conducting activities
in Texas, albeit purely through telephone conversations and written and electronic correspondence. 
Because this lawsuit indisputably arises from the alleged contacts described in the evidence, the trial
court correctly concluded that it has specific jurisdiction over Wilson.

 Allowing this suit to continue in Texas comports with traditional notions of fair play
and substantial justice. Wilson proposes that Oregon is the proper forum, contending that Texas is
an improper forum because the witnesses reside in Arizona and Oregon and that Texas is a
convenient forum only for the appellees. Wilson's argument ignores the facts that he initiated the
relationships at issue here by contacting the Texas attorneys and that the bulk of the action
(representation of the Elliotts and receipt of some payments) occurred in Texas, and he minimizes
the likely role of appellees as witnesses. The only apparent relevant activity in Oregon is Wilson
corresponding and sending payments. Texas courts have a strong interest in resolving disputes over
whether Texas-based attorneys who have performed work have been paid for that work. Although
likely inconvenient and expensive for Wilson to travel to Texas, it would likely be equally
inconvenient and expensive for each appellee to travel to Oregon. (The Elliotts, residing in Arizona,
would be inconvenienced whether the suit is prosecuted in Texas or Oregon.) The trial court's ruling
requires a person who initiated a request for legal services, allegedly promised to pay for those
services to be rendered, paid for some of the services that were rendered, then allegedly failed to pay
for the remainder of the services rendered to now defend a suit based on that alleged failure in the
state where the performance was sought, induced, and rendered. This scenario does not offend
traditional notions of fair play and substantial justice.

 We conclude that the trial court has jurisdiction over this cause of action irrespective
of the merits of the underlying suit. This conclusion and any representations of fact in this opinion
are based solely on the record before us and do not bind future adjudicators reviewing revised
pleadings or additional evidence. Nothing in this opinion should be taken as a comment on the merit
of appellees' causes of action or Wilson's defenses to those causes.

 Because we conclude that the trial court did not err by finding that it has jurisdiction
over this cause of action, (3) we affirm the trial court's denial of Wilson's special appearance.


 

 Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed: December 29, 2011
1. Personal jurisdiction is determined based on the plaintiff's pleadings, both parties' legal
arguments, and any evidence the parties submit proving or disproving jurisdiction. Kelly v. General
Interior Constr., Inc., 301 S.W.3d 653, 659 (Tex. 2010).
2. Wilson disputes these allegations, but the trial court was entitled to resolve them as they
affect jurisdiction. See Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227 (Tex.
2004). We find no basis on which to overturn an implied finding of fact supporting the exercise of
jurisdiction to consider the merits of this case.
3. After concluding that the record shows that the trial court has specific jurisdiction over
Wilson in this case, we need not consider whether it also has general jurisdiction over him.