# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00507-CV

**Matthew A. Wilson, Appellant**

**v.**

**Brian Baker and Stephen R. Walker, Appellees**

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY, NO. 12932-C HONORABLE LINDA RODRIGUEZ, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Matthew Wilson appeals the trial court's denial of his special appearance in the suit brought against him by Brian Baker and Stephen R. Walker. Appellees, both Texas attorneys, allege that Wilson, an Oregon attorney, promised and failed to pay them fully for legal services rendered in Texas to Wilson's friends. Wilson filed a special appearance contending that he lacked sufficient contacts with Texas to justify its court's exercise of jurisdiction over him. We will affirm the trial court's denial of Wilson's special appearance.

### BACKGROUND

The following summary of events underlying this appeal is drawn from pleadings and exhibits on file at the time of the special appearance hearing.[1] It is not intended to be binding regarding the resolution of any issue in future litigation.

---

[1] Personal jurisdiction is determined based on the plaintiff's pleadings, both parties' legal arguments, and any evidence the parties submit proving or disproving jurisdiction. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010).

Appellees allege that Wilson contacted them to represent Kevin and Valerie Elliott, who Wilson said he considers like family. The Elliotts, former Texas residents living in Arizona, were charged with a crime in Travis County, Texas. Appellees each agreed to represent one of the Elliotts for a total payment of $20,000. Although there is no formal, signed document in the record entitled "Contract" in which Wilson expressly states that he is obligated to pay the full $20,000, he paid appellees approximately $11,000 and appellees submitted to the trial court printouts of emails in which Wilson repeatedly thanks appellees for their work and expresses his intention to pay more. In his responses to interrogatories, Wilson repeatedly "denies ever agreeing or contracting to be responsible primarily, or secondarily, for the obligation of paying of the Elliotts' fees."

Appellees sued when the payments stopped, alleging that they have provided legal services to the Elliotts in exchange for and reliance on Wilson's promise to pay $20,000 for those services. They allege theories of breach of contract, promissory estoppel, and quantum meruit.

Wilson filed a special appearance, contending that he is not subject to either general or specific jurisdiction in Texas courts. He does not reside in Texas, denied entering into a contract with appellees, and alleged that he has no purposeful business contacts with Texas. He filed an affidavit denying that he ever agreed to be responsible for the Elliotts' fees, although he did pay some of them. He contended that he lacks sufficient minimum contacts with Texas and that a Texas court would offend traditional notions of fair play and substantial justice by exercising jurisdiction over him. He also contended that defending the suit in Texas would be inconvenient and costly.

Appellees replied that Wilson initiated contact with them in Texas and that his contact and payment of them induced them to perform work in Texas that benefitted Wilson. Their lawsuit arose directly from those contacts and provided a basis for a Texas court to exercise jurisdiction.

They submitted their own affidavits as well as printouts from email correspondence with Wilson to support their allegations.

Wilson supplemented his special appearance with his affidavit and deposition testimony that he urged showed a lack of jurisdiction. He details in his affidavit his lack of contacts with Texas in this case, such as the fact that he signed no contract agreeing to pay appellees, has not met either attorney about the Elliotts' case, and has never met Baker in person. (He had met Walker in conjunction with an unrelated case.) He also relies on the professional services agreement between Baker and Kevin Elliott that is signed only by Elliott.

The trial court held a hearing on the special appearance at which it admitted exhibits and heard argument. It then denied the special appearance without stating a basis for its ruling.

## STANDARD OF REVIEW

The Texas Supreme Court recited the analytical framework for jurisdiction over non-resident defendants under the Texas long-arm statute and the constitution in *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). Personal jurisdiction is a question of law that we review *de novo*. *Id.* When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). The jurisdictional inquiry must be distinct from the underlying merits; a court that equates the substantive merits with personal jurisdiction violates the fairness considerations that form the basis of due-process mandates. *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 81 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

"Texas courts may assert in personam jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Under the Texas long-arm statute, the plaintiff has the initial burden to plead sufficient allegations to confer jurisdiction. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). The defendant seeking to avoid being sued in Texas then has the burden to negate all potential bases for jurisdiction pled by the plaintiff. *Id.*

The Texas long-arm statute "allows the statute to reach as far as the federal constitutional requirements of due process will allow." *Moki Mac*, 221 S.W.3d at 575; *accord Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005). Under constitutional due-process analysis, the exercise of personal jurisdiction is proper when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the assertion of jurisdiction complies with "traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 575 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Once a court determines that a nonresident defendant has purposefully established minimum contacts, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. *Petrie v. Widby*, 194 S.W.3d 168, 175 (Tex. App.—Dallas 2006, no pet.) (citing *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d 223, 231 (Tex. 1991). In a special appearance, a defendant bears the burden of presenting "a compelling case that the presence of some consideration would render

4

jurisdiction unreasonable." *Guardian*, 815 S.W.2d at 231 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *International Shoe Co.*, 326 U.S. at 319). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *American Type*, 83 S.W.3d at 806 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). A nonresident's contacts can give rise to either specific or general jurisdiction. *American Type*, 83 S.W.3d at 806. General jurisdiction arises when the defendant's contacts with the forum are continuous and systematic. *Id.* at 807. Specific jurisdiction arises when (1) the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, and (2) the cause of action arises from or is related to those contacts or activities. *Burger King*, 471 U.S. at 472; *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995). In a specific jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.3d at 575-76 (citing *Guardian*, 815 S.W.2d at 228).

We consider three factors in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Thus, sellers who reach out

5

beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities. Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* at 575 (internal citations and quotations omitted). Additionally, the minimum-contacts analysis is focused on the quality and nature of the defendant's contacts, rather than their number. *American Type*, 83 S.W.3d at 806.

When considering whether the forum's exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice, courts must determine whether the relationship between the defendant and the forum is such that requiring the defendant to defend a suit is reasonable. *World-Wide Volkswagen*, 444 U.S. at 292. The burden on the defendant to defend the suit in a foreign (to him) forum must be considered in light of the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most efficient resolution. *Id.*

**ANALYSIS**

Wilson asserts by his sole issue on appeal that Texas courts have no personal jurisdiction over him. He contends that his contacts with Texas are too sparse to support general jurisdiction and do not satisfy the purposeful availment prong of the due process analysis. He argues that he has consistently tried to avoid contact with Texas concerning the underlying case by referring the case to appellees, not signing any formal agreement to pay, and contacting appellees only by phone, email, mail, and fax. In his affidavit, he cites the statute of frauds defense he contends invalidates any unwritten agreement to be responsible for the debt of another as evidence that no one

6

contemplated that he would be responsible for the Elliotts' debt. He also relies on a case holding that a California attorney who represented some Texas residents in a California bankruptcy case did not subject herself to Texas jurisdiction by requesting that a Texas bankruptcy trustee send her notices pertaining to a related Texas bankruptcy, advising the Texas clients concerning the Texas bankruptcy, or signing a fee agreement and accepting their payments. *Bergenholtz v. Cannata*, 200 S.W.3d 287, 295-97 (Tex. App.—Dallas 2006, no pet.). The attorney in that case had no other significant current contacts with Texas, however, and the Texas bankruptcy predated her involvement with the clients. *Id.* at 296. She did her work almost exclusively in California. *Id.* at 291. The court of appeals concluded that the attorney's contact with Texas was merely fortuitous and a byproduct of her representation of her clients in the California bankruptcy. *Id.* at 296.

Wilson's actions in this case differ crucially from those described in *Bergenholtz*. Although he did not choose for the Elliotts to be prosecuted in Texas, he sought counsel for them in Texas. Based on the allegations and documents on file in the appellate record, Wilson did not simply refer their case to appellees or find counsel and step away. Instead, he allegedly stated over the telephone on October 3, 2008 that he would pay appellees $20,000 to represent the Elliotts, who were like family to him.[2] In an email dated October 3, 2008, he stated to appellee Baker "[o]nce we have some more information, I would like to set up a call with you and the Elliott's (sic) and their AZ attorney to develop a game plan." Appellees allege that they agreed to represent the Elliotts

---

[2] Wilson disputes these allegations, but the trial court was entitled to resolve them as they affect jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). We find no basis on which to overturn an implied finding of fact supporting the exercise of jurisdiction to consider the merits of this case.

because of Wilson's assertions. They allege—and supplied correspondence allegedly from Wilson supporting the allegation—that Wilson paid some of the $20,000 and asserted that more would be forthcoming. A letter dated October 22, 2008 states that the first installment payment of fees for the Elliott matter was enclosed, and asserts that Wilson would send additional sums "shortly." A December 3 email states that Wilson "will be sending another check . . . for the Elliott legal fees." In a December 22 email, Wilson states that he would send a check for $5,000 the next day and a check for $10,000 in January 2009. A February 2009 email states that Wilson had hit an unexpected cash crunch, but was "working on a solution" and was "committed to getting [appellees] paid." In a June 19, 2009 email, Wilson asked Baker to confirm that he had received $11,000 of the $20,000 fee. In a July 30, 2009 email, Wilson stated that he would be sending a $1,000 payment on Monday. In an August 12, 2009 email Wilson asserted that he would soon pay approximately $4,000 "towards Mr. Elliott's fees." In an August 26, 2009 email, Wilson asserts that he would like to end his involvement—particularly if appellees would "release him" for immediate payment of $5,000. Otherwise, he would only pay $1,000 per month "until the full $20K is paid." Appellees stated in their affidavit that they "fully performed all obligations under their agreement and represented the Elliotts to the conclusion of their cases in January 2010."

These actions combine to demonstrate that Texas has jurisdiction over Wilson for the causes of action alleged here. Unlike the defendant in *Michiana*, who defeated the exercise of jurisdiction in large part by showing that its contact with a Texas resident was initiated by the Texas resident, *see* 168 S.W.3d at 784-85, evidence shows that Wilson purposefully initiated contact with Texas residents intending that they would perform work in Texas. Evidence in the record on appeal shows that his contact with the Texas lawyers continued during their representation of the Elliotts.

Using the language of *Michiana*, we conclude that Wilson "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state" and, therefore, is "subject to the jurisdiction of the latter in suits based on [his] activities." *See id.* (citing *Burger King*, 471 U.S. at 473). Finally, although there is no evidence that Wilson visited Texas regarding the Elliotts' case or that Wilson profited from their representation, evidence shows that he sought the benefit of helping to protect his friends—who, according to Baker, Wilson said were "like family" to him—by paying for licensed attorneys to represent them. While a party can structure transactions to avoid a particular forum, *see id.*, Wilson allegedly called Texans in Texas, induced them to represent his friends in Texas courts by promising to pay them, and sent money to Texas addresses. Other than not availing himself of a visit to Texas concerning the Elliotts' case, Wilson did nothing to avoid Texas jurisdiction. He purposefully availed himself of the privilege of conducting activities in Texas, albeit purely through telephone conversations and written and electronic correspondence. Because this lawsuit indisputably arises from the alleged contacts described in the evidence, the trial court correctly concluded that it has specific jurisdiction over Wilson.

Allowing this suit to continue in Texas comports with traditional notions of fair play and substantial justice. Wilson proposes that Oregon is the proper forum, contending that Texas is an improper forum because the witnesses reside in Arizona and Oregon and that Texas is a convenient forum only for the appellees. Wilson's argument ignores the facts that he initiated the relationships at issue here by contacting the Texas attorneys and that the bulk of the action (representation of the Elliotts and receipt of some payments) occurred in Texas, and he minimizes the likely role of appellees as witnesses. The only apparent relevant activity in Oregon is Wilson corresponding and sending payments. Texas courts have a strong interest in resolving disputes over

9

whether Texas-based attorneys who have performed work have been paid for that work. Although likely inconvenient and expensive for Wilson to travel to Texas, it would likely be equally inconvenient and expensive for each appellee to travel to Oregon. (The Elliotts, residing in Arizona, would be inconvenienced whether the suit is prosecuted in Texas or Oregon.) The trial court's ruling requires a person who initiated a request for legal services, allegedly promised to pay for those services to be rendered, paid for some of the services that were rendered, then allegedly failed to pay for the remainder of the services rendered to now defend a suit based on that alleged failure in the state where the performance was sought, induced, and rendered. This scenario does not offend traditional notions of fair play and substantial justice.

We conclude that the trial court has jurisdiction over this cause of action irrespective of the merits of the underlying suit. This conclusion and any representations of fact in this opinion are based solely on the record before us and do not bind future adjudicators reviewing revised pleadings or additional evidence. Nothing in this opinion should be taken as a comment on the merit of appellees' causes of action or Wilson's defenses to those causes.

Because we conclude that the trial court did not err by finding that it has jurisdiction over this cause of action,[3] we affirm the trial court's denial of Wilson's special appearance.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed: December 29, 2011

_____

[3] After concluding that the record shows that the trial court has specific jurisdiction over Wilson in this case, we need not consider whether it also has general jurisdiction over him.

10